UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JAY SOHNEN,

                              Plaintiff,

              v.

CHARTER COMMUNICATIONS, INC.,

                              Defendant.

---

**MEMORANDUM AND ORDER**

18-CV-6744 (LDH) (RLM)

LASHANN DEARCY HALL, United States District Judge:

Jay Sohnen ("Plaintiff") brings the instant action against Charter Communications, Inc. ("Defendant") alleging claims for: (i) failure to reasonably accommodate in violation of the Americans With Disabilities Act of 1990 ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"); (ii) disability discrimination in violation of the ADA, NYSHRL, and NYCHRL; (iii) age discrimination in violation of the ADA, the Age Discrimination in Employment Act of 1967 ("ADEA"), NYSHRL, and NYCHRL; and (iv) retaliation in violation of the ADA, ADEA, NYSHRL, and NYCHRL.  Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment and to dismiss the amended complaint in its entirety.

**UNDISPUTED FACTS[1]**

Plaintiff suffers from "macular degeneration," a vision impairment with which he has suffered since approximately 2006.  (Def.'s Reply Statement of Material Facts Pursuant to Local

---

[1] Unless otherwise indicated, the following undisputed facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1.  To the extent any fact is disputed, it is so indicated.  Facts that are not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("if the opposing party [ ] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").  That being said, both parties included argument in

Civ. R. 56.1 ("Def.'s Reply 56.1") ¶¶ 80–82, ECF No. 33; Decl. of Daniel Kadish ("Kadish Decl."), Ex. O at 5–6, ECF No. 29-15 (Plaintiff's ADA forms).)  Plaintiff began working for Defendant's predecessor, Time Warner Cable, as a direct sales representative ("DSR") in December 2013.  (Def.'s Reply 56.1 ¶ 1.)  DSRs are responsible for promoting and selling Defendant's residential products and services directly to customers at their homes.  (Def.'s Reply 56.1 ¶ 128.)  According to the DSR job description, DSRs must, among other things, "have a valid driver's license, reliable transportation, and automobile insurance as required by Time Warner Cable [later Defendant Charter]."  (*Id.* ¶ 14; Kadish Decl., Ex. D at 3, ECF No. 29-4 (DSR job description).)

Plaintiff's designated sales territories largely covered the New York City boroughs of Brooklyn and Manhattan.  (Def.'s Reply 56.1 ¶¶ 7–8, 148.)  To reach his territory, Plaintiff, like other DSRs, used public transportation.  (Def.'s Reply 56.1 ¶¶ 155, 160.)  On any given day, Plaintiff hawked Defendant's products to residential customers and potential customers who lived in the same building or in nearby buildings within a short walking distance of each other.  (*Id.* ¶ 149).  Defendant terminated Plaintiff's employment in February 2017.  (*Id.* ¶ 113.)

## I.    Plaintiff's HR Complaint

From the beginning of his employment until August 2015, Plaintiff reported to Elliot Rifkin.  (*Id.* ¶ 2.)  In September 2015, Plaintiff began reporting to Hernando Rangel.  (*Id.* ¶ 3.)  From September 2016 through the end of his employment, Plaintiff reported to Jerome Jones.  (*Id.* ¶ 5.)

---

their respective 56.1 statements, which is expressly prohibited under this Court's Individual Rules.  Specifically, Rule III.A.6(h) requires "[f]actual contentions that parties believe are undisputed by circumstantial evidence should be argued in memoranda."  In utter disregard for this rule, the parties' 56.1 statements became a frustrating tit-for-tat unhelpful to the Court.  Where argument appears in the parties' 56.1 statements, the Court disregards it.

On September 6, 2016, Plaintiff sent a complaint to Eric Ellerbee in Defendant's human relations ("HR") department, complaining of Rangel's "tone, comments, persistent condescending attitude, [and] unresponsiveness[.]" (*Id*. ¶¶ 18–19.) Specifically, Plaintiff complained that: (1) Rangel criticized Plaintiff for taking a day off due to fatigue (*id*. ¶¶ 37–38); (2) during a team meeting, Rangel allegedly commented, "How can you let this old man outperform you?" to a newer DSR who was having difficulty meeting his quota (*id*. ¶¶ 41, 170); (3) Rangel allegedly commented to Plaintiff, "Show us the old women that are in your phone" (*id*. ¶ 43); (4) Rangel asked Plaintiff, "How are you going to make up the vacation time you're taking over the July 4th weekend?" (*id*. ¶ 46); (5) Rangel gave positive feedback to two peers but not to Plaintiff (*id*. ¶ 51); and (6) Rangel failed to assign territories to Plaintiff when requested (*id*. ¶ 52).

Defendant investigated Plaintiff's complaint and ultimately substantiated Plaintiff's claim that Rangel said to a younger team member who had been outperformed by Plaintiff, "[y]ou're going to let this old man [Sohnen] beat you?" (*Id*. ¶ 170.)[2] As a result of Plaintiff's complaint and the investigation, Rangel was given a final written warning for engaging in "inappropriate behavior" and "unprofessional behavior in addressing agents." (*Id*. ¶ 64.) Plaintiff was also transferred to Jones' team. (*Id*. ¶¶ 61–62.) Once transferred, Plaintiff no longer interacted with Rangel, and Rangel never again made any comments to Plaintiff that Plaintiff found inappropriate. (*Id*. ¶ 63.)

---

[2] Defendant's investigation did not substantiate Plaintiff's complaints of Rangel's comments regarding Plaintiff's fatigue, the images of women in Plaintiff's phone, or Plaintiff's request to take time off for the 4th of July. (*Id*. ¶¶ 40, 45, 49.) The parties disagree as to whether Plaintiff's remaining complaints were substantiated.

## II.     Plaintiff's Suspension, Accommodation Request, and Termination

On November 2, 2016, while visiting Defendant's Brooklyn office, Ellerbee noticed that Plaintiff was looking very closely at a computer screen seemingly unable to see the screen.  (*Id.* ¶¶ 66–67.)  Ellerbee also overheard Plaintiff speaking to a colleague who offered Plaintiff a ride to Williamsburg.  (*Id.* ¶¶ 68, 182–183.)  Ellerbee then asked Plaintiff whether he had a car, to which Plaintiff responded that he did not.  (*Id.* ¶ 68.)  Plaintiff explained that he did not have a car and stopped driving because of a vision-impairment.  (*Id.* ¶¶ 71–73.)  Plaintiff further explained that his prior supervisors, Rifkin and Rangel, knew that he did not have a car and were "okay with it."  (*Id.* ¶ 70.)  Nonetheless, Ellerbee informed Plaintiff that he was being placed on an immediate 30-day unpaid suspension for violation of Defendant's Motor Vehicle Policy.  (*Id.* ¶¶ 75–76.)

That same day, Ellerbee informed Plaintiff in writing that he was being placed on a 30-day unpaid suspension and that he would be terminated if he remained unable to drive and did not secure a non-driving position.  (*Id.* ¶ 76.)  Defendant also provided Plaintiff with an employee accommodation request form, a physician certification to be completed by Plaintiff's treating physician, and a consent for release of medical information.  (*Id.* ¶ 78.)  Plaintiff returned the completed forms on November 14, 2016.  (*Id.* ¶ 79.)  In the cover letter accompanying Plaintiff's completed accommodation request forms, Plaintiff reiterated that his prior supervisors were aware that Plaintiff did not own a vehicle and were informed of his vision impairment.  (*Id.* ¶ 80.)  In the physician certification form, Plaintiff's doctor confirmed that Plaintiff had been diagnosed with a vision disability, which limited his ability to drive but did not limit his ability to take public transportation without assistance.  (*Id.* ¶¶ 80–82, 197.)  Additionally, Plaintiff's doctor stated that Plaintiff could perform the essential responsibilities of

4

his job using public transportation and recommended that Plaintiff use public transportation as an accommodation.  (*Id*. ¶¶ 197–198.)

Defendant determined that it could not accommodate Plaintiff's request to use public transportation because "his performance wasn't reflecting [that he could do his job fully using public transportation]."  (*Id*. ¶ 86 (alterations original).)  Thus, Defendant determined that Plaintiff was not qualified for any DSR position—including one in Manhattan—because Plaintiff did not drive.  (*Id*. ¶¶ 210–213, 217.)  On January 24, 2017, Defendant offered Plaintiff a position in its customer care department, which did not require Plaintiff to have a car.  (*Id*. ¶¶ 105, 108.)  Plaintiff declined the offer because it involved a pay cut, among other reasons.  (*Id*. ¶ 112.)  On February 22, 2017, Plaintiff was terminated.  (*Id*. ¶ 113.)  Plaintiff was paid through the date of his termination.  (*Id*. ¶ 114.)

On June 13, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated and retaliated against him in violation of the ADA and ADEA.  (*Id*. ¶ 225; Decl. of Daniel Braverman ("Braverman Decl."), Ex. 11, ECF No. 32-11 (Pl.'s EEOC charge).)  According to Defendant's EEOC position statement, Plaintiff was terminated because he could not drive.  (Def.'s Reply 56.1 ¶ 226; Braverman Decl., Ex. 12 at 5, ECF No. 32-12 (Def.'s EEOC position statement).)  Defendant did not maintain in its EEOC position statement that Plaintiff was terminated because of performance deficiencies or that Plaintiff's use of public transportation caused performance deficiencies.  (Def.'s Reply 56.1 ¶¶ 227–228.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I.   Failure to Accommodate

Under the ADA, NYSHRL, and NYCHRL, an employer must provide reasonable accommodation for known disabilities of its employees unless providing the accommodation would cause undue hardship.  42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. L. 296(3)(a)–(b); N.Y.C. Admin Code § 8-107(15)(a), 8-102.  The ADA, NYSHRL, and NYCHRL require the same prima facie showing.[3]  To succeed on a failure to accommodate claim, a plaintiff must make a

---

[3] Except that, the definition of "disability" is broader under NYSHRL and NYCHRL.  *See Romanello v. Shiseido Cosms Am. Ltd.*, No. 00 CIV. 7201, 2002 WL 31190169, at *7 n. 2 (S.D.N.Y. Sept. 30, 2002), *aff'd*, 71 F. App'x 880 (2d Cir. 2003).

prima facie showing that: "(1) plaintiff is a person with a disability under the meaning of the [statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).  For purposes of this motion, Defendant does not dispute that Plaintiff has established the first two elements of his failure to accommodate claim.  (*See* Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Mem.") at 16 n. 4, 16–23, ECF No. 47.)  Defendant maintains, however, that Plaintiff has failed to establish that he could perform the essential functions of his job with reasonable accommodation or that Defendant failed to make such accommodation.  (*Id.* at 16–23.)  The Court disagrees.

## A.    Whether Plaintiff Could Perform the Essential Functions of His Job with Reasonable Accommodation

The term "essential function" is not defined by statute.  However, the ADA's implementing regulations define "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  The regulations also provide a non-exhaustive list of the reasons a function may be deemed essential, among them: (1) because the reason the position exists is to perform that function; (2) because the limited number of employees available among whom the performance of that job function can be distributed; and (3) because the function is highly specialized so that the incumbent in the position is hired for his expertise or ability to perform the particular function.  *Id.* at § 1630.2(n)(2).

Here, Defendant maintains that driving is an essential function of Plaintiff's job as a DSR.  (Def.'s Mem. at 17.)  In urging the Court to make such a finding, Defendant relies heavily

on the fact that, in Defendant's judgment, the function was deemed essential. (*Id.*)  That simply is not enough.  That is, "[a]lthough a court will give considerable deference to an employer's determination as to what functions are essential, there are a number of relevant factors that may influence a court's ultimate conclusion as to a position's essential functions." *McMillan*, 711 F.3d at 126.  Those additional factors include: (1) the written job descriptions prepared before advertising or interviewing applicants for the job; (2) the amount of time spent on the job performing the function and the consequences of not requiring the incumbent to perform the function; (3) the terms of a collective bargaining agreement; (4) the work experience of past incumbents in the job; and/or (5) the current work experience of incumbents in similar jobs. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)). Notably, no one factor is dispositive. *Id*.  Defendant's effort to tackle the remaining factors is unavailing.

Defendant first points to the written job requirements for the DSR position, which state that a DSR "[m]ust have a valid driver's license, reliable transportation, and automobile insurance[.]" (Kadish Decl., Ex. D at 3.)  This description, according to Defendant, "formalized the requirement that DSRs be able to drive."  (Def's Mem. at 19.)  Although the DSR "job requirements" may, at first blush, suggest that Plaintiff's job required the ability to drive, that is not what they actually say.  In fact, "reliable transportation" could certainly include various modes of transportation, including mass transit provided by New York City Transit that was used by Plaintiff. [4]

---

[4] Defendant points the Court to the Second Circuit's decision in *Stevens v. Rite Aid Corporation*, to no avail. (*See* Def.'s Mem. 18.)  In *Stevens*, the court relied heavily on the defendant's judgment coupled with the plaintiff's job description to determine that administering immunization injections was an essential function of the plaintiff's job. *Stevens*, 851 F.3d at 229.  While the court did not explicitly go through each factor that informs whether a function is an essential job function, it appears that the other factors, viewed collectively, did not sway the court to find

With respect to the amount of time Plaintiff spent driving on the job, Defendant argues only that this factor is not alone dispositive of whether driving was an essential function. (Def.'s Mem. at 20.)  True.  But, the factor nonetheless warrants consideration.  Here, this factor weighs against Defendant.  The undisputed evidence demonstrates that Plaintiff spent virtually no time driving an automobile to sell Defendant's products.  (Def.'s Reply 56.1 ¶ 152.)  And, according to Plaintiff's unrefuted testimony, Plaintiff could reach his territory in Brooklyn and Manhattan "more easily" by public transportation and his use of public transportation did not interfere with the performance of his job duties.  (*Id*. ¶ 153.)[5]  Indeed, Plaintiff was frequently advised by his managers to avoid "windshield time (i.e., driving)" and to instead "stay on the turf to make sales."  (*Id*. ¶ 154.)

Next, Defendant argues that "although there is no collective bargaining agreement applicable to DSRs, the work experience of both [Plaintiff] and other DSRs demonstrates that they were expected to, and did, drive when needed."  (Def.'s Mem. at 20.)  The Court would have gladly accepted any invitation to test Defendant's argument against the record.  Incredibly, however, Defendant makes this argument sans record cite, leaving it wholly unsupported by fact and without utility.  Nonetheless, Defendant presses that these "facts" coupled with Plaintiff's expressed desire to "regularly change his territory" leads to the conclusion that "one of the essential functions of the DSR role is to be able to quickly and reliably get to any territory

---

against the Defendant.  *Id*. at 230.  Here, unlike in *Stevens*, Plaintiff's job description does not explicitly require Plaintiff to drive a vehicle.  (*See* Kadish Decl., Ex. D at 3.)

[5]  Defendant denies that Plaintiff could reach his "turf" more easily by public transportation and that he did not need to travel, except by foot, once he reached his "turf."  However, Defendant fails to properly refute these facts by citation to admissible evidence and they are therefore deemed undisputed.  *See Giannullo*, 322 F.3d at 140 ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.")

[Defendant] assigns on any given day, including those out of the range of direct public transportation." (*Id.*)  That conclusion, even if true, is neither here nor there.  The question is whether these facts support the conclusion that "driving" was an essential function of the job. On this record, they do not.[6]

This is especially so, given that Defendant has not adduced any evidence that Plaintiff was unable at any time to fulfill his obligations as a DSR.  Nonetheless, Defendant argues that Plaintiff did not and could not fully perform his job without the ability to drive, pointing to Ellerbee's testimony in support.  (Def.'s Mem. at 21; Def.'s Reply 56.1 ¶¶ 87, 89.)  Specifically, Ellerbee testified that Plaintiff's performance was not satisfactory between April 2016 and September 2017.  (Kadish Decl., Ex. B at 76:13–15, ECF No. 29-2 (Ellerbee deposition excerpts).)  However, Defendant does not dispute that Plaintiff fully performed his job duties, including meeting his performance goals and generally complying with company policy, after his initial trial period as a new employee.  (Def.'s Reply 56.1 ¶ 163.)  Indeed, the evidence shows that Plaintiff exceeded performance expectations in 2015 and was recognized as a "DSR automation superstar" in 2016.  (*See* Braverman Decl., Ex. 4 at 85:11–13, 91:22–92:4, ECF No. 32-4 (Ellerbee deposition excerpts); *see generally id.*, Ex. 6, ECF No. 32-6 (Plaintiff's 2015

---

[6]  The Court is wholly unpersuaded by Defendant's specious argument based on Defendant's Motor Vehicle Policy. As best can be gleaned from the single sentence reference to the Motor Vehicle Policy, Defendant maintains that DSRs are subject to the Motor Vehicle Policy and therefore DSRs are also required to have cars, so driving is an essential function of the job. (*See* Def. Mem. at 20.)  For context, the Motor Vehicle Policy states, in part, that: "All employees who operate a Company vehicle or, a personal vehicle to perform company business, employees who are eligible for a car allowance must fully adhere to this policy." (Kadish Decl., Ex. E at 2, ECF. No. 29-5 (Def.'s Motor Vehicle Policy).)  Nowhere does the policy expressly state that DSRs are required to adhere to the policy. Indeed, employees subject to the policy are not set out by job category.  Rather, as Plaintiff argues, the Motor Vehicle Policy applies to any employee—no matter their title—who drives a company car or personal vehicle for company business. (*See* Pl.'s Mem. L. Opp. Mot. Summ. J. ("Pl.'s Mem.") at 10, ECF No. 48.)  Plaintiff did not. Therefore, based on a plain reading of the policy, there is a question of fact as to whether Plaintiff was subject to the policy.  In any event, on this record, the Court is unwilling to find that the Motor Vehicle Policy supports Defendant's contention that driving was an essential function of Plaintiff's job as a DSR.

performance review); *see id*., Ex. 7 at 2–3, ECF No. 32-7 (May 2016 Newsletter identifying Plaintiff as a "top performer" and "superstar").)  Moreover, Plaintiff trained new DSRs at the request of his supervisors.  (Def.'s Reply 56.1 ¶ 164.)  At bottom, and as the parties agree, Plaintiff's job was to sell Defendant's products on any given day to potential clients by knocking on doors in apartments or homes in the same neighborhood within walking distance of each other.  (*Id*. ¶¶ 128, 149.)  And, in the end, the parties agree that the important "issue" for Plaintiff and other DSRs was whether they sold Defendant's products, regardless of the means of transportation employed to do so.  (*Id*. ¶ 162.)

In a last ditch effort to support its argument that driving was an essential function, Defendant maintains that "[t]he record shows that if [Plaintiff] was asked to work in any territory within [Defendant's] service area . . . he may not have been able to do so, because he does not have access to a car in order to get to the territory, and even if he did, [Plaintiff's] disability would prevent him from driving the car."  (Def.'s Mem. at 21.)  Where to start?  Once again, Defendant fails to include a single record cite to support its argument.  Moreover, the first proposition—Plaintiff, if asked to work in any of Defendant's territory, "may not be able to do so"—is entirely speculative.  In any event, even generously construing Defendant's argument as raising the strongest argument it suggests,[7] Defendant seems to argue that if there were parts of Defendant's service area only accessible by car, driving must be an essential function of the DSR position if DSRs are expected to work in any territory within Defendant's service area. Defendant's conclusion is faulty.  That is, Defendant's argument ignores that other modes of

---

[7] This approach is typically reserved for pro se litigants.

reliable transportation exist.  In the era of Uber, Lyft, and other ride share companies on which commuters rely, Defendant's argument falls flat.

*      *      *

Upon a proper consideration of all of the factors set out above, it is clear that at a minimum there is a question of fact as to whether driving is an essential function of Plaintiff's job as a DSR.

### B.      Whether Defendant Offered a Reasonable Accommodation

Where, as here, an "employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable."  *Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d. Cir. 2015).  The ADA regulations provide that a reasonable accommodation may include, *inter alia*, "[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position[.]"  29 C.F.R. § 1630.2(o)(2)(ii).  If the employer has offered a plainly reasonable accommodation, "[t]here is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable."  *Noll*, 787 F.3d at 94 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400–02 (2002)).

Defendant argues that it provided Plaintiff with a reasonable accommodation by first placing him on paid leave and then offering him a different position at the company.  (Def.'s Mem. at 22.)  As an initial matter, Defendant does not offer how paid leave in Plaintiff's case would be an "effective" accommodation.  *See Noll*, 787 F.3d at 95 ("Reasonable accommodation may take many forms, but it must be effective." (citing *Barnett*, 535 U.S. at 400)).  In explaining the concept of an "effective" accommodation, the Supreme Court has said that "[a]n *ineffective*

12

modification or adjustment will not accommodate a disabled individual's limitations." *Barnett*, 535 U.S. at 400 (quotation marks omitted) (emphasis original).

Here, Plaintiff has a visual impairment that prevents him from driving.  (Def.'s Reply 56.1 ¶ 197.)  Defendant has offered no evidence supporting how paid leave accommodates Plaintiff's disability, and the Court can think of none.  Defendant's reliance on *Romanello v. Shiseido Cosmetics Am. Ltd.*, is misplaced.  (*See* Def.'s Mem. at 22.)  The plaintiff in *Romanello* had suffered a seizure and requested multiple, temporary, medical leaves of absences as a result. *Romanello v. Shiseido Cosms. Am. Ltd.*, No. 00-CV-7201, 2002 WL 31190169, *4 (S.D.N.Y. Sept. 30, 2002), *aff'd*, 71 F. App'x 880 (2d Cir. 2003).  The court found that defendants reasonably accommodated plaintiff's illness by granting her repeated requests for medical leaves of absence.  *Id.* at *10 ("In light of the defendants' action to accommodate the plaintiff, combined with the plaintiff's failure to indicate how such accommodations did not meet her expectations or what additional reasonable accommodations should be made, the plaintiff cannot sustain her claim for failure to provide reasonable accommodations under the NYHRL and NYCHRL.").  The instant case is wholly dissimilar because Defendant has not granted Plaintiff's request to use public transportation as an accommodation for his vision impairment.

Defendant further argues that it provided a reasonable accommodation by offering Plaintiff a position in the care department.  (Def.'s Mem. at 22.)  Although the reassignment of an employee to a vacant position can be a reasonable accommodation under certain circumstances, a reasonable accommodation is also one that will enable an employee to "enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."  29 C.F.R. § 1630.2(o)(1)(iii).  Plaintiff maintains that he would have made considerably less money in the care department position.  (Def.'s Reply 56.1 ¶ 222.)

Defendant disputes that Plaintiff would necessarily make less in the alternate role but concedes that the position involves less base pay and "extremely" limited opportunities to make commissions.  (*Id*. ¶¶ 221–22.)  Thus, based on the record before the Court, at a minimum, a genuine dispute of material fact exists as to whether Defendant's offer of an alternative position in the care department was a reasonable accommodation.

### C.     Whether Plaintiff Proposed a Reasonable Accommodation

To establish a prima facie case for failure to accommodate, "[t]he plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment[.]"  *McBride*, 583 F.3d at 97.  To meet its burden, a plaintiff need only "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefit."  *Stone*, 118 F.3d at 98 (citation and quotation marks omitted).  The ADA regulations provide that a "reasonable accommodation," may include "modifications or adjustments . . . to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(iii).  If a plaintiff meets this minimal burden, the burden then shifts to the defendant to show the accommodation is not reasonable and would "impose[] an undue hardship."  *Stone*, 118 F.3d at 98.

Here, Plaintiff argues that there is a genuine issue of material fact regarding whether the use of public transportation was a reasonable accommodation because the accommodation would have allowed him to continue "exceeding work expectations" in the DSR role without undue burden on Defendant.  (Pl.'s Mem. at 14.)  Indeed, the parties agree that Plaintiff's request to continue using public transportation would have effectively maintained the status quo.  (*See*

14

Def.'s Reply 56.1 ¶¶ 219–220.)  Thus, it is certainly plausible that the use of public transportation was a reasonable accommodation.  Defendant argues that Plaintiff's proposed accommodation cannot be reasonable because it eliminates plaintiff's ability to drive, which is an essential function of the job.  (*See* Def.'s Mem. at 17.)  Of course, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).  However, as explained above, a genuine dispute exists as to whether Plaintiff's ability to drive was an essential function of his job.  Thus, whether the use of public transportation is a reasonable accommodation necessarily presents a triable issue of fact.  *See McMillan*, 711 F.3d at 126, 128–29 (finding that a jury could find the plaintiff's arrival time was not an essential function of his job, and thus the plaintiff's request to make up time during his lunch break was a sufficiently reasonable accommodation).

"If a plaintiff suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable." *McMillan*, 711 F.3d at 128.  An accommodation presents an undue hardship on an employer when it requires "significant difficulty or expense."  *Id*.  (citing 42 U.S.C. § 12111(10)(A)).  Defendant has presented no evidence showing that the use of public transportation would otherwise cause undue hardship requiring significant difficulty or expense.  Although Defendant presented testimony from Ellerbee that Plaintiff was not meeting his monthly performance goals "because he was not able to reach his turf" (Def.'s Reply 56.1 ¶ 89), Defendant does not dispute that Plaintiff fully performed all of his job duties as a DSR and was recognized as a "top performer" and "superstar" (*id*. ¶ 163).  In any event, there is no direct evidence that Plaintiff's alleged performance issues were the result of Plaintiff's use of public transportation.  Rather, Ellerbee testified that Plaintiff failed to maximize his territories because

his "knocks were sporadic." (*Id.* ¶ 90.)  Based on the record, the Court cannot conclude that

Plaintiff's request to use public transportation would result in undue hardship.  In other words,

whether Plaintiff proposed a reasonable accommodation is a genuine issue of fact precluding

summary judgment.[8]

## II.   Disability Discrimination

A claim for discrimination based on disability under the ADA, NYSHRL, and NYCHRL

is subject to the burden-shifting analysis established in *McDonnel Douglas Corporation v.*

*Green*, 411 U.S. 792 (1973).  *See McMillan*, 711 F.3d at 125 (quotation omitted).  Accordingly, a

plaintiff may establish a prima facie claim by showing: "(1) his employer is subject to the ADA;

(2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform

the essential functions of his job, with or without reasonable accommodation; and (4) he suffered

adverse employment action because of his disability."  *Id*. (quoting *Sista v. CDC Ixis N. Am.,*

*Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  A plaintiff's prima facie burden is "minimal."

*McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).

Defendant argues that Plaintiff cannot establish that he was otherwise qualified to

perform the essential functions of his job (the third element) and cannot show he suffered an

adverse employment action because of his disability (the fourth element).  (Def.'s Mem. at 24.)

Regarding the third element, Defendant relies on the same argument made with respect to

---

[8]  The parties raise arguments as to whether Defendant properly engaged in the interactive process envisioned by the ADA.  *See* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.")  Because Plaintiff has shown the existence of a plausible accommodation, and Defendant has failed to rebut that showing, the Court declines to address whether the proper interactive process occurred.  *See Lovejoy-Wilson*, 263 F.3d at 219 ("Because we find sufficient evidence of an outright refusal to accommodate to preclude summary judgment on this claim, we need not decide whether the refusal of [defendant] to enter into an 'interactive process' alone would foreclose summary judgment." (citation omitted)).

Plaintiff's failure to accommodate claim.  (*Id.*)  That is, Plaintiff could not perform the essential functions of his job because he cannot drive.  For the reasons already explained, that argument is rejected.  Regarding the fourth element, Defendant argues that Plaintiff cannot show that he suffered an adverse employment action because of his disability.  (*Id.*)  Specifically, Defendant contends that it suspended, then terminated, Plaintiff's employment for a legitimate, non-discriminatory reason.  (*Id.*)  Accordingly, Defendant argues that it is Plaintiff's burden to show the existence of a pretext for his termination.  The Court disagrees.

"When the parties agree that the employer complains of conduct that is the direct result of the employee's disability . . . there is no need to evaluate whether the employer's adverse employment action made in response to that conduct is pretextual."  *McMillan*, 711 F.3d at 129. Here, the parties agree that Plaintiff was suspended and ultimately terminated because he did not have a car and could not drive.  (Def.'s Reply 56.1 ¶¶ 181, 190, 214.)  Likewise, the parties agree that Plaintiff's doctor determined that he could not drive because of his disability.  (*Id.* ¶ 197.) Thus, summary judgment can be, and is, denied without deciding whether a reasonable jury could find pretext existed for Plaintiff's termination.

## III.    Age Discrimination

### A.    ADEA and NYSHRL Age Discrimination Claims

The ADEA and NYSHRL make it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); *see also* N.Y. Exec. L. § 296(1)(a).  Under the familiar framework of *McDonnell Douglas*, "plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d. Cir. 2010).  To establish a prima facie

17

case of age discrimination under the ADA and the NYSHRL, a plaintiff must demonstrate "(i) that [he] was within the protected age group; (ii) that [he] was qualified for the position; (iii) that [he] experienced an adverse employment action; and (iv) that such action occurred under circumstances giving rise to an inference of discrimination." *Id*. at 107; *see also Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) ("Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA."). Defendant argues that the age-based comments made towards Plaintiff are not evidence of a discriminatory intent to terminate Plaintiff's employment—they were non-actionable "stray remarks" as a matter of law. (Def.'s Mem. at 13.) The Court agrees.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [related to a protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Without more, "stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). To weigh the probative value of allegedly discriminatory remarks, courts in this circuit consider, "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

18

Here, Plaintiff maintains that three remarks made by his former supervisor Rangel are evidence of discriminatory intent. (Pl.'s Mem. at 23.) First, during a team meeting in 2016, Rangel commented to a younger team member being outperformed by Plaintiff, "[y]ou're going to let this old man [Sohnen] beat you?" (Def.'s Reply 56.1 ¶ 170.) Second, Plaintiff testified that in or about August 2016, Rangel asked him to show his younger team members "some of the old broads you're dating from the pictures on your cell phone." (*Id.* ¶ 172.) Third, Plaintiff says Rangel would say to him, "How you doing old man?" (*Id.* ¶ 174.)

As an initial matter, the parties agree that Rangel played no role in Plaintiff's suspension or termination. (*Id.* ¶ 118.) Plaintiff has adduced no evidence that the remarks were made in the context of the Defendant's decision-making process. *See Parsons v. JPMorgan Chase Bank, N.A.*, No. 16-CV-0408, 2018 WL 4861379, at *9 (E.D.N.Y. Sept. 30, 2018) (finding supervisor's remark that he preferred younger employees insufficient to give rise to an inference of discrimination "because it was not made by a decision-maker in plaintiff's 2013 promotional application" and was not in the context of plaintiff's promotional application). Ultimately, Plaintiff's only argument suggesting the remarks show discriminatory intent is that Defendant issued a "final written warning" to Rangel and "was compelled to transfer [Plaintiff] to a different supervisor." (Pl's Mem. at 23.) But Plaintiff provides no legal support or explanation as to how these facts show the remarks were anything more than stray. Accordingly, the remarks themselves do not lend to an inference of discrimination.

In an effort to convince the Court otherwise, Plaintiff contends that Rangel's comments, viewed together with the circumstances culminating in his termination, raise an inference of discrimination. (*Id.* at 23–24.) Where "other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a

19

more ominous significance." *Danzer*, 151 F.3d at 56.  Other indicia can include evidence of a negative performance evaluation based on subjective categories, a reduction in an employee's job duties, and the assignment of unsuitable work leading up to the adverse employment action. *See, e.g., Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) (finding that irregularities in the evaluation process, when combined with alleged discriminatory statements, were sufficient to establish a *prima facie* case of discrimination).  For example, in *Danzer*, on which Plaintiff relies, the court found other indicia of discrimination where the plaintiff was repeatedly denied funding for various projects and received unusually negative reviews following his supervisors age-based comments.  *See Danzer*, 151 F.3d at 53.

Here, Plaintiff points out that: (i) he was suspended shortly after he complained of age discrimination; (ii) Plaintiff was treated less well as one of the oldest DSRs reporting to Rangel when the comments were made and when he was terminated; (iii) Defendant provided inconsistent reasons for Plaintiff's termination; and (iv) Doug Gardner, who made the final decision to terminate Plaintiff, was aware of Plaintiff's HR complaint regarding the comments. (Pl.'s Mem. at 23–24.)  Yet Plaintiff fails to explain how these circumstances give Rangel's comments a more ominous significance.  Although Plaintiff's allegations concerning his complaint and subsequent suspension may raise an inference of retaliation, they are insufficient to support his ADEA claim.  *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for purposes of establishing a prima facie case of retaliation under Title VII[.]"); *see also Brollosy v. Margolin, Winer & Evens, LLP*, No. 04-CV-0873, 2006 WL 721433, at *11 (E.D.N.Y. Mar. 20, 2006) (dismissing ADEA claims where plaintiff "offered no evidence that [supervisor's] remarks were related in any way to" the adverse employment action).  Likewise, Defendant's inconsistent

20

reasons for suspending then terminating Plaintiff may suggest retaliation, but they are otherwise completely unrelated to Plaintiff's age. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) (finding inconsistent reasons for termination and close temporal proximity between protected conduct and termination raised a triable issue of fact with respect to retaliation claims). Further, Plaintiff's assertion that he "was treated less well and in an inferior manner as compared to younger DSRs," is not supported by record evidence. (Pl.'s Mem. at 24.) To the contrary, Plaintiff introduced evidence that he was recognized as a top performer while working for Rangel. (Def.'s Reply 56.1 ¶ 163; Braverman Decl., Ex. 7.) There simply are no indicia that might support an inference that these remarks had a more ominous significance. In sum, the totality of direct and circumstantial evidence fails to raise an inference of age discrimination. Accordingly, Plaintiff's age discrimination claims under the ADA and NYSHRL are dismissed.

### B.     Plaintiff's Age Discrimination Claims Under the NYCHRL

The NYCHRL makes it unlawful for an employer to discharge an employee "because of the actual or perceived age" of the employee. New York City Admin. Code § 8-107(1)(a)(2). Courts must analyze NYCHRL claims "separately and independently from any federal and state law claims," and the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). Under the NYCHRL, a plaintiff need only show he was treated "less well" because of his membership in a protected class. *Mihalik*, 715 F.3d at 110. On a motion for summary judgment, the Court must review the NYCHRL discrimination claim considering the totality of circumstances and "overall context" of the challenged conduct. *Id*. at 111, 113. An employer is only entitled to summary

21

judgment "if the record establishes as a matter of law that discrimination played *no* role in its

actions."  *Id*. at 110 n.8 (quotation marks and alternation omitted).

As explained above, Plaintiff fails to adduce evidence upon which a reasonable jury

could find that he was treated less well on account of his age.  Although Plaintiff testified that

Rangel did not reassign Plaintiff's territory when Plaintiff was sent to "burnt" or "boarded up"

buildings, the parties agree that Rangel was following company policy and Plaintiff's requests

for reassignment were ultimately granted.  (Def.'s Reply 56.1 ¶¶ 54–55, 58.)  And, although

Rangel questioned Plaintiff's request for vacation time, Plaintiff still received the days off.  (*Id*.

¶¶ 46–48.)  There is simply no evidence that Plaintiff was treated less well because of his age.

*See, e.g., Mihalik*, 715 F.3d at 115 (vacating summary judgment where plaintiff was "subjected .

. . to a different set of employment conditions than her male colleagues").  Accordingly,

summary judgment is also granted with respect to Plaintiff's NYCHRL age-discrimination claim.

## IV.    Retaliation

### A.    Retaliation for Requesting an Accommodation under the ADA, NYSHRL, NYCHRL

The ADA, NYSHRL, and NYCHRL make it unlawful for an employer to "discriminate

against any individual because such individual has opposed any act or practice made unlawful by

this chapter or because such individual made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a);

*see also* N.Y. Exec. L. § 296(7); N.Y. City Admin. Code § 8-107.  To establish a prima facie

case of retaliation under the ADA and NYSHRL, a plaintiff must show that: "(1) he engaged in

an activity protected by the [statute]; (2) the employer was aware of this activity; (3) the

employer took adverse employment action against him; and (4) a causal connection exists

between the alleged adverse action and the protected activity."  *Treglia v. Town of Manlius*, 313

F.3d 713, 719 (2d Cir. 2002); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (applying the ADA analysis to claims under the NYSHRL).  Plaintiff's retaliation claims are subject to the same burden shifting analysis as his discrimination claims above.  *See Treglia*, 313 F.3d at 719 ("Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases.").  That said, the burden to make a prima facie case for retaliation claims under the NYCHRL is more favorable to the plaintiff.  Rather than just protecting plaintiffs who engage in protected activities from adverse employment actions, the NYCHRL protects plaintiffs who "oppos[e] any practice forbidden under" the law from employer conduct that is "reasonably likely to deter a person engaging in such action."  *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 800 (S.D.N.Y. 2020) (quoting *Mihalik*, 715 F.3d at 112).  Here, the protected activity was Plaintiff's request for accommodation.  *See Pacheco v. Park S. Hotel, LLC*, No. 12 Civ. 9127, 2014 WL 292348, at *4 (S.D.N.Y. Jan. 27, 2014) ("[R]equests for accommodation constitute protected activity under the ADA and NYCHRL.")

Defendant argues that Plaintiff cannot show a causal connection between his accommodation request and Defendant's adverse action.  (Def.'s Mem. at 26.)  The Court disagrees.  Although the undisputed facts show that Plaintiff requested his accommodation after he was suspended, Defendant ultimately terminated Plaintiff because it could not grant his accommodation request.  Still, Defendant has offered a purportedly legitimate reason for termination, so the burden is Plaintiff's to show pretext.

"The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."  *El Sayed*, 627 F.3d at 933.  A plaintiff must show "but-for" causation existed.  *Zann*

23

*Kwan*, 737 F.3d at 845 (citation omitted).  "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."  *Id*. at 846.

Here, Plaintiff points to inconsistencies in Defendant's reasons for termination as evidence of pretext.  (Pl.'s Mem. at 19–20.)  Specifically, Defendant's EEOC statement stated that Defendant was terminated because he could not perform an essential function of his job—i.e., driving.  (Braverman Decl., Ex. 12 at 5.)  Defendant did not cite performance issues as grounds for Plaintiff's termination in its EEOC statement.  (*See generally, id.*)  Ellerbee testified, however, that Defendant could not grant Plaintiff's accommodation request because he was not meeting his performance goals while using public transportation.  (Def.'s Reply 56.1 ¶ 86.)  Additionally, Plaintiff has adduced evidence that he in fact was meeting his performance goals while using public transportation.  (*See* Braverman Decl., Ex. 2 at ¶¶ 9–19, ECF No. 32-2.)  In any event, Defendant's inconsistent reasons for denying Plaintiff's accommodation request and ultimately terminating his employment are enough to raise a genuine issue of fact as to pretext.  *See Zann Kwan*, 737 F.3d at 846–47 (finding "shifting and somewhat inconsistent explanations for [plaintiff's] termination" enough for a juror to infer the explanations were pretextual).

B.    **Retaliation for Filing an Age Discrimination Complaint under the ADEA, NYSHRL, and NYCHRL**

Retaliation claims under the ADEA and NYSHRL are also analyzed under the *McDonnell Douglas* burden-shifting test.  *Gorzynski*, 596 F.3d at 110.  To establish a prima facie retaliation claim under the ADEA, Plaintiff must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [him] engaging in the protected activity and the adverse employment

24

action." *Id.* (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)).

Here, the record shows that Plaintiff was suspended mere weeks after the investigation into Plaintiff's HR complaint—which included age discrimination allegations—was complete. (Def.'s Reply 56.1 ¶ 35; Kadish Decl., Ex. M, ECF No. 29-13 (Oct. 20, 2016 email indicating results of investigation.)  For the same reasons stated above, the Court finds that a reasonable juror could infer that the explanations given for Plaintiff's termination were pretextual. Accordingly, Defendant's motion for summary judgment on this ground is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's motion is granted with respect to Plaintiff's age-discrimination claims but denied as to Plaintiff's failure to accommodate, disability discrimination, and retaliation claims.

SO ORDERED.

Dated: Brooklyn, New York  
      March 28, 2022

/s/ LDH                 
LaSHANN DeARCY HALL  
United States District Judge