UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JAY SOHNEN,

                                Plaintiff,                   **OPINION & ORDER**

        v.                                     18-CV-6744
                                           (Marutollo, M.J.)
CHARTER COMMUNICATIONS, INC.,

                                Defendant.

------------------------------------------------------------------------x
**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Jay Sohnen brings this action against Defendant Charter Communications, Inc., seeking claims for (i) failure to reasonably accommodate his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"); (ii) disability discrimination in violation of the ADA, NYSHRL, and NYCHRL; and (iii) retaliation in violation of the ADA, ADEA, NYSHRL, and NYCHRL.

On October 23, 2024, the parties consented to magistrate judge jurisdiction before the undersigned in this matter. *See* Dkt. No. 68. A jury trial is scheduled to commence on January 27, 2025. Presently before the Court are the parties' respective motions *in limine*.

Plaintiff moves *in limine* to exclude documents allegedly produced by Defendant years after the close of discovery, as well as to preclude Defendant's purportedly late disclosed witnesses from testifying at trial. *See* Dkt. No. 77.

Defendant moves *in limine* to: (i) sequester non-party witnesses until they have completed their testimony; (ii) preclude evidence of or reference to previously dismissed claims of age discrimination; (iii) preclude evidence of or reference to other lawsuits against Defendant; (iv)

preclude evidence of or reference to punitive damages, including Defendant's size and financial condition or, alternatively, bifurcating any claims for punitive damages; (v) preclude the testimony of witness Elliot Rifkin; (vi) preclude evidence of or reference to the investigation and determination of the Equal Employment Opportunity Commission ("EEOC"), including the testimony of any investigator or other representative of the EEOC; (vii) preclude evidence of and reference to irrelevant character evidence regarding witnesses, including witness's Eric Ellerbee's sexual orientation and arrest record; (viii) preclude evidence of and reference to the parties' pretrial positions and discovery disputes; (ix) preclude evidence of and reference to the size and nature of Defendant's legal defense team; and (x) preclude evidence that is not based on the personal knowledge of the witness, including hearsay and opinion testimony.  *See* Dkt. No. 81.

For the reasons set forth below, Plaintiff's motion *in limine* is denied in part; the Court otherwise reserves ruling on Plaintiff's motion as described in this Opinion and Order. Defendant's motion *in limine* is also granted in part and denied in part; the Court again otherwise reserves ruling on Defendant's motion as described in this Opinion and Order.

## I.    Relevant Factual Background

Per the parties' proposed joint pre-trial order, dated December 20, 2024, the parties have stipulated to the following set of facts.  *See* Dkt. No. 80 at 7-12.

Plaintiff has macular degeneration, a vision impairment.  *Id.* at 7.[1]  In December 2013, Plaintiff began working for Defendant's predecessor, Time Warner Cable, Inc. ("Time Warner"), as a Direct Sales Representative ("DSR").  *Id.*  During the entire time that Plaintiff was employed by Defendant, Plaintiff was a DSR; his job duties did not change during his entire tenure with Defendant.  *Id.* at 8.  As a DSR, Plaintiff was required to "have a valid driver's license, reliable

---

[1] Page citations are to the ECF-stamped pages.

transportation and automobile insurance as required by Time Warner." *Id.* Further, as a DSR, Plaintiff was responsible for engaging in business development and promoting Defendant's residential products and conduct quality sales presentations by "getting out," seeing customers and former customers, and selling Defendant's goods and services. *Id.*

The DSR job posting at the time Plaintiff was a DSR states that the duties of a DSR consisted of:

[] Duties:

    i.    Conduct quality in-house sales presentations to new and existing Time Warner Customers face to face Monday thru Friday 11 am thru 8pm and for one half day (times determined (sic) by need) on Saturdays. Direct Sales Representatives are expected to work past these hours as needed to complete the day's business.

    ii.    Collect and turn in any monies collected from new or existing customers sold within 24 hours.

    iii.    Accurately complete and maintain customer records for services, equipment requests and the privacy of subscriber data.

    iv.    Attend sales meetings and training sessions as directed by management.

    v.    Work with minimal supervision.

    vi.    Must be able to work in adverse weather conditions and walk for extensive periods of time, up and down stairs, lift up to 50 lbs.

    vii.    Achieve established sales goals and quotas.

    viii.    Work independently to promote the sale of cable television, high speed Internet and Digital Home Phone services to new or existing customers. Some of the sales leads are generated within an assigned territory provided by Time Warner.

*Id.* at 9.  Defendant's motor vehicle policy states:

All employees who operate a company vehicle or, a personal vehicle to perform company business, employees who are eligible for a car allowance must fully adhere to this policy. Failure to do so may result disciplinary action up to, and including termination of employment . . . Employees who drive their personal

3

vehicle on authorized company business[ ] are required to possess a valid driver's
license as specified above and carry auto insurance with a minimum of $100,000
for bodily injury and $100,000 for property damage, regardless of state minimums.
Employees must demonstrate possession of the required insurance by providing to
Time Warner an original document (certificate of insurance or auto policy
declarations page) verifying the required coverage. Compliance will be verified
upon employment and periodically thereafter as deemed necessary by [Time
Warner].

*Id.* at 9.  At all times that Plaintiff was employed by Defendant, his driver's license was never

suspended or revoked.  *Id.* at 13.

To promote and sell Defendant's residential products and services, Plaintiff would travel

to an assigned territory and knock on the doors of the customers and potential customers that were

assigned to him, i.e., his "turf."  *Id.* at 10.  On any given day, Plaintiff's "turf" consisted of

residential customers and potential customers; Plaintiff's designated sales territories largely

covered the New York City boroughs of Brooklyn and Manhattan.  *See id.*

From the beginning of his employment until August 2015, Plaintiff reported to Mr. Rifkin.

*Id.*  In September 2015, Plaintiff began reporting to Hernando Rangel.  *Id.*  Mr. Rangel was

Plaintiff's supervisor during the period when Defendant acquired Time Warner.  *Id.*  From

September 2016 through the end of his employment, Plaintiff reported to Jerome Jones.  *Id.* at 10-

11.  Mr. Jones never asked Plaintiff whether he had a car.  *Id.* at 11.  Mr. Jones also never asked

Plaintiff to see his license, registration, or insurance.  *Id.*

On September 6, 2016, Plaintiff sent a complaint to Mr. Ellerbee in Defendant's human

relations department.  *Id.*  Following Plaintiff's complaint, on August 31, 2016, Defendant

transferred Plaintiff to Mr. Jones's team, where he remained for the duration of his employment.

On November 2, 2016, Defendant sent Plaintiff a letter that stated, in relevant part:

I am writing to you regarding the status of your employment with Time Warner,
New York City Market. Specifically, we have learned that you currently do not

4

> have a required vehicle which will make you ineligible to drive for Time Warner
> based on the TWC Motor Vehicle Policy.
>
> Based on this information, you are being placed on an unpaid suspension (unless
> you have vacation or personal time) for a period of thirty days to rectify all
> outstanding issues related to your suspended license. At the end of that time period,
> if you remain ineligible to drive and have not been able to secure an available non-
> driving position, your position will be terminated.
>
> Your suspension is effective beginning November 2, 2016 and will end December
> 1, 2016.

*Id.* at 11.  During the period when he was on suspension, Plaintiff applied for multiple DSR and

sales positions.  *Id.* at 11.  Defendant did not offer to transfer Plaintiff to any of these positions.

*Id.* at 12.

In February 2017, Defendant terminated Plaintiff's employment.  *See id.*  By letter dated

February 22, 2017, Defendant informed Plaintiff, in relevant part:

> This letter serve[s] to notify you that your employment with [Defendant] has been
> terminated effective immediately. Additionally, you remain eligible to reapply in
> the future.
>
> Leadership was made aware you no longer possessed a motor vehicle which is
> required by the MVR motor vehicle policy. Additionally, a letter provided to you
> on November 2, 2016 states you will have 30 days to secure a non-driving position.
> Furthermore, you also put in for an ADA accommodation to secure a non-driving
> position.
>
> The only position available during this time was with Customer Care which you
> declined to take after meeting with the Department leadership. Unfortunately, the
> business is no longer able to hold your current position in Direct Sales.

*Id.* at 12.

On June 13, 2017, Plaintiff filed a Charge of Discrimination with the EEOC alleging

discrimination and retaliation against Defendant in violation of the ADA and the ADEA.  *Id.* at

12.

## II.    <u>Applicable Legal Standards</u>

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *Gorbea v. Verizon New York, Inc.*, No. 11-CV-3758 (KAM) (LB), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing *Luce*, 469 U.S. at 40 n. 2); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context."  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011).  Indeed, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

"Rule 402 of the Federal Rules of Evidence dictates that evidence that is not relevant is not admissible[;] [r]elevant evidence is evidence that has a tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence.  *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, No. 17-CV-5495 (HG), 2024 WL 4744612, at *2 (E.D.N.Y. Oct. 28, 2024) (citing Fed. R. Evid. 401).  Although it is well-established that Rule 401's test for relevance is a "low threshold, easily satisfied," *United States v. Garnes*, 102 F.4th 628, 638 (2d Cir. 2024), even if challenged evidence is relevant, the Court must conduct a balancing test and may exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Garnes*, 102 F.4th at 636.

III.   <u>**Plaintiff's Motions *in Limine***</u>

Plaintiff moves *in limine* to exclude "two categories of late witnesses and documents." Dkt. No. 77 at 6. Plaintiff alleges that the "[t]he first category of late witnesses, Lisa Kerr [] and Julie Cole ([] collectively with Ms. Kerr, the '2022 Witnesses'), were first identified by Defendant over two years after the close of fact discovery (and well after its motion for Summary Judgment was denied, almost in its entirety, by this Court), in the 2022 Joint Pre-Trial Order ('2022 JPTO'), in violation of the Federal Rules of Civil Procedure [] and well-established precedent." *Id.* (citing Dkt. No. 53). Plaintiff adds that "[t]he first category of late documents was also produced in 2022, mere days before the 2022 JPTO was due ('2022 Documents')." *Id.*

Plaintiff alleges that "[t]he second category includes late witnesses—someone identified only as 'Altice USA, Inc. Records Custodian,' Alethia Williams, and Alex Boadu (collectively, the '2024 Witnesses' []) who were first identified on December 17, 2024, four years after the close of fact discovery, in a draft of the 2024 Joint Pre-Trial Order ('2024 JPTO'), only three days before the 2024 JPTO was due." *Id.* Defendant also included exhibits in the 2024 JPTO, referencing documents that it intends to produce, which as of [December 20, 2024], it has still not produced [to Plaintiff] ('2024 Documents')." *Id.*

A.   **Applicable Legal Standards**

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In reviewing whether a district court's Rule 37 sanction is appropriate, the court must

7

consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alteration in original) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *HDI Global Insurance Co. v. Kuehne + Nagel Inc.*, No. 23-CV-6351 (LJL), 2024 2024 WL 4987043, at *1 (S.D.N.Y. Dec. 5, 2024) (citing *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988)).

### B.    The 2022 Witnesses and the 2022 Documents

Plaintiff argues that Defendant should be precluded from relying on the 2022 Witnesses or the 2022 Documents at trial because they were produced two years after the close of discovery, on or about June 16, 2022. *See* Dkt. No. 77 at 12; *see* Dkt. No. 53 (2022 JPTO).

In response, Defendant argues that Ms. Kerr and Ms. Cole were disclosed over two years ago, in the 2022 JPTO. *See* Dkt. No. 83 at 12-13. Similarly, Defendant argues that it previously produced "additional spreadsheets and records regarding [Plaintiff's] performance during his tenure with [Defendant], including hours worked and sales reports, in accordance with its ongoing disclosure obligations." *Id.* at 7; *see also* Dkt. No. 77 at 8-9 (stating that "on June 13 and June 14, 2022, Defendant produced 115 spreadsheets and 85 pages of other documents"). Defendant contends that Plaintiff never sought these documents during discovery and has had knowledge of Ms. Kerr and Ms. Cole for at least two years. Dkt. No 83 at 7. Defendant adds that "Plaintiff's claims of prejudice by their identification is belied by his failure to seek the depositions of Ms.

Kerr, Ms. Cole or any other witnesses during that period—even when this Court reopened discovery for limited purposes." *Id.*

The Court agrees with Defendant. After the 2022 JPTO was filed on June 17, 2022 (Dkt. No. 53), apart from one member of Plaintiff's litigation team withdrawing from the litigation (Dkt. No. 54), no action was taken on the docket until the undersigned—who had recently been assigned to this matter—issued an order requesting a status report be filed by March 14, 2024. *See* March 11, 2024 Text Order. Plaintiff—who has the burden of prosecuting this case—did not file any requests to re-open discovery to address the 2022 Witnesses or the 2022 Documents at any point after June 17, 2022, until filing the current motion *in limine* on December 20, 2024.

And even if Plaintiff were to argue that he took no action because he was waiting to file a motion in *limine* to preclude the 2022 Witnesses and the 2022 Documents, Plaintiff still did not raise anything related to these witnesses or exhibits at the October 30, 2024 pre-trial conference, wherein the Court permitted limited discovery in advance of the January 27, 2025 trial and also set a schedule for pre-trial submissions, including motions *in limine*. *See* Dkt. No. 71 (Transcript).

Moreover, Plaintiff has been aware of the identity of Ms. Kerr since at least May 24, 2019, when Defendant identified her "as a person who may have knowledge or information regarding Plaintiff's claims" in Defendant's responses and objections to Plaintiff's first set of interrogatories. *See* Dkt. No. 83 at 9-10. Ms. Kerr was also discussed in the deposition of Mr. Ellerbee in January 2020 and in Defendants Rule 56.1 Statement on May 15, 2020. *See id.* at 10, 18. Plus, as noted above, Ms. Cole was identified no later to Plaintiff than June 17, 2022, when the 2022 JPTO was filed. *See id.*; *see also* Dkt. No. 53. Thus, contrary to Plaintiff's assertion, inclusion of the 2022 Witnesses and 2022 Evidence here does not constitute "sandbagging." *Cf.* Dkt. No. 77 at 8.

9

Accordingly, the Court denies Plaintiff's motion *in limine* seeking to preclude the 2022 Witnesses or 2022 Documents on lateness grounds.

### C.    The 2024 Witnesses and the 2024 Documents

Plaintiff argues that on December 17, 2024, Defendant identified as trial witnesses—for the first time and four years after the close of fact discovery and just over one month before trial begins—an individual identified as "Altice USA, Inc. Records Custodian," as well as individuals named Alethia Williams and Alex Boadu. Dkt. No. 77 at 10 (citing 2024 JPTO). Plaintiff adds that these 2024 Witnesses "are not included in Defendant's Initial Disclosures or its Amended Disclosures." Dkt. No. 77 at 10 (citations omitted). According to Plaintiff, Defendant claimed that it would produce these 2024 Documents, but Plaintiff had not received them as of the filing of its December 20, 2024 motion *in limine*.

Defendant makes multiple arguments in response to this portion of Plaintiff's motion. Defendant argues that the late witnesses stem from when the Court reopened discovery on October 30, 2024, whereby the Court permitted "limited discovery related to (1) subpoenaing medical records of Plaintiff's ophthalmologist; (2) conducting a deposition of Plaintiff's ophthalmologist; and (3) subpoenaing Plaintiff's recent employment records," with such limited discovery to be completed by December 6, 2024. Text Order dated December 6, 2024. On December 6, 2024, the Court ordered, *inter alia*, that "[t]o the extent subpoenaed documents have not yet been received, the parties shall request, by December 9, 2024, that the Court so-order the subpoenas. The Court notes, however, that the trial will not be delayed based on the receipt of the subpoenaed documents, particularly where the subpoenas were issued in mid-November 2024." Text Order dated December 6, 2024. On December 9, 2024, the Court so-ordered the subpoenas requested by Defendant. *See* Dkt. No. 75.

Defendant also argues that, in preparing for trial, Defendant learned that "Mr. Ellerbee, who is no longer employed by [Defendant] and had moved to California, would not be available to testify at trial." Dkt. No. 83 at 11. "When Plaintiff refused [Defendant's] request to reopen Mr. Ellerbee's deposition," Defendant states that it "identified Alethea Williams and Alex Boadu as witnesses because both witnesses could provide testimony previously anticipated to be provided by Mr. Ellerbee." *Id.* Defendant adds that "Ms. Williams and Mr. Boadu were specifically referenced in the Motion for Summary Judgment pleadings and identified in those pleadings as witnesses during the investigation into [Plaintiff's] workplace complaint. *Id.* (citing Dkt. 28, ¶ 32; Dkt 29, Ex. B., Ellerbee Dep. 46:7-9.)). Defendant notes that statements of Mr. Boadu "are part of Plaintiff's proposed trial exhibits, and were designated by Plaintiff in the 2022 JPTO." *Id.* at 12.

Defendant further argues that it "added as an exhibit to the 2024 JPTO, a reference to internet archives of public job postings of direct sale positions with [Defendant's] competitor, Altice USA, Inc. from March to August 2017, following the termination of Plaintiff's employment with" Defendant; Defendant "also identified the Altice USA, Inc. records custodian as a potential witness for purposes of authenticating these documents." *Id.* at 12.

At this stage, the Court does not have sufficient information to rule on this portion of Plaintiff's motion. First, with respect to the testimony of Ms. Williams and Mr. Boadu, Defendant argues that their testimony is necessary because "Mr. Ellerbee would not be available to testify at trial." Dkt. No. 83 at 11; *see also id.* at 13. But Plaintiff, in his motion *in limine*, states that Mr. Ellerbee "is *expected to testify at trial* or have his deposition transcript read into the record[.]" Dkt. No. 77 at 24 (emphasis added). If Mr. Ellerbee does, in fact, plan to testify in person, then it would appear that there would no basis for Defendant to introduce testimony of Ms. Williams or

11

Mr. Boadu.  But if Plaintiff seeks to have Mr. Ellerbee's deposition transcript read into the record,[2] there may, in fact, be a basis to permit testimony from Ms. Williams or Mr. Boadu into evidence.

Next, although Defendant argues that "[e]vidence of an open comparable position with Altice USA, Inc. is relevant to [Defendant's] position that Plaintiff failed to mitigate his damages" and "[t]estimony of the records' custodian will simply authenticate that record," it is not clear why this information was not provided during the course of discovery—especially as the job posting was allegedly from March to August 2017.  *See* Dkt. No. 83 at 12.  It is also unclear as to why Defendant has not yet produced this document to Plaintiff, particularly since Defendant claims that the posting is available on "internet archives."  *Id.*  Further, it is not clear if Defendant has even subpoenaed a custodian to testify for these records who would then testify at trial.

Additionally, it is not clear what are the 2024 Documents at issue.  On one hand, Plaintiff alleges that "Defendant has still not produced the 2024 Documents it intends to use at trial."  Dkt. No. 77 at 11.  On the other hand, Defendant alleges that "the documents obtained by subpoena were not previously in [Defendant's] possession, custody, or control and were produced promptly upon receipt from the subpoenaed parties."  Dkt. No. 83 at 15.[3]

_____

[2] The Court is not making a ruling at this time regarding what portions (if any) of Mr. Ellerbee's deposition transcript may be read into evidence at trial in this matter.

[3] Defendant argues that it

> timely produced to Plaintiff all documents it received in response to subpoenas that this Court specifically permitted Charter to serve pursuant to its October 30, 2024 Order.  In fact, the Court So Ordered several of those subpoenas where parties initially failed to respond.  It defies logic that the Court would permit this discovery but concurrently hold that none of the information obtained from that discovery could be used at trial.

Dkt. No. 83 at 13.  While the Court is not ruling on admissibility of these subpoenaed documents at this time, the Court notes that it is well settled that "parties can obtain information in discovery that is not necessarily admissible at trial." *Kaiser Aluminum Warrick, LLC v. U.S Magnesium, LLC*, No. 22-CV-3105 (JGK) (KHP), 2023 WL 2024620, at *1 (S.D.N.Y. Feb. 15, 2023) (collecting cases); *Harmon v. Mosley*,

Accordingly, the parties shall be prepared to discuss these issues, as well as the *Patterson* factors described above, at the Court's final pre-trial conference. The parties shall also be prepared to discuss whether Mr. Ellerbee will testify as a live witness at trial, as well as the ramifications if Mr. Ellerbee does not testify live at trial.

Notwithstanding the above, the Court notes that it will not enter a continuance of the trial here for any reason. This case was filed in 2018. The Court has an obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *cf. Oakley v. MSG Networks*, No. 17-CV-6903, 2024 WL 5056111, at *3 (S.D.N.Y. Dec. 10, 2024) (noting that piecemeal discovery "would run contrary to Rule 1's command that the Federal Rules of Civil Procedure be "construed, administered, and employed by the [C]ourt . . . to secure the just, speedy, and inexpensive determination of every action and proceeding.'") (Sullivan, J.). In short, the trial date will not be adjourned.

## IV.    Defendant's Motions *in Limine*

### A.    Defendant's motion to sequester non-party witnesses until they have completed their testimony

Defendants moves the Court for an order sequestering from the courtroom the individuals named as non-party witnesses in this case—namely Elliott Rifkin, Lee Angioletti, M.D., Douglas Gardner, Julie Cole, Lisa Kerr and any other non-party witness that may be permitted to testify in this action—until such individual has completed his or her testimony. *See* Dkt. No. 81 at 7-8.

---

No. 23-CV-04225 (JHR) (RFT), 2024 WL 4858993, at *4 (S.D.N.Y. Nov. 21, 2024) ("[t]he scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence," such that "parties can obtain information in discovery that is not necessarily admissible at trial").

Under Fed. R. Evid. 615(a), "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony.  Or the court may do so on its own."  The rule, however, does not authorize excluding "(1) a party who is a natural person; (2) one officer or employee of a party that is not a natural person if that officer or employee has been designated as the party's representative by its attorney; (3) any person whose presence a party shows to be essential to presenting the party's claim or defense; or (4) a person authorized by statute to be present."  *Id.*

Fed. R. Evid. 615 "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid."  *Geders v. United States*, 425 U.S. 80, 87 (1976).  "In making a Rule 615 ruling, a district court must exercise discretion, and among the factors that might usefully inform the exercise of such discretion are: 1) how critical the testimony in question is, that is, whether it will involve controverted and material facts; 2) whether the information is ordinarily subject to tailoring, such that cross-examination or other evidence, could bring to light any deficiencies; 3) to what extent the testimony of the witness in question is likely to encompass the same issues as that of other witnesses, 4) the order in which the witnesses will testify; 5) any potential for bias that might motivate the witness to tailor his testimony; and 6) if the court is considering exempting the witness from sequestration under Rule 615(3), whether the witness's presence is 'essential' rather than simply desirable."  *United States v. Jackson*, 60 F.3d 128, 135 (2d Cir. 1995) (cleaned up and internal citations omitted).  "Because a court may only decline to grant a party's request to sequester particular witnesses under one of the Rule 615 exemptions, the rule carries a strong presumption in favor of sequestration."  *Id.*; *see also In re Omeprazole Pat. Litig.*, 190 F. Supp. 2d 582, 583 (S.D.N.Y. 2002).  "The party opposing sequestration therefore has the burden of demonstrating why the pertinent Rule 615 exception

14

applies, and "why the policy of the Rule in favor of automatic sequestration is inapplicable in that situation." *Jackson*, 60 F.3d at 135 (citations omitted).

In his response to Defendant's motion, Plaintiff states that he "does not oppose this fundamental trial practice." Dkt. No. 82 at 5.  In light of Fed. R. Evid. 615(a) and the controlling case law, as well as Plaintiff's position, the Court grants Defendant's motion to sequester Elliott Rifkin, Lee Angioletti, M.D., Douglas Gardner, Julie Cole, Lisa Kerr and any other non-party witness until each individual has completed his or her testimony.

**B.    Defendant's motion to preclude evidence of, or reference to, previously dismissed claims of age discrimination**

On March 28, 2022, the Court granted Defendant's motion for summary judgment with respect to Plaintiff's claim for age discrimination claims under the ADA and NYSHRL.  *See Sohnen v. Charter Commc'ns, Inc.*, No. 18-CV-6744 (LDH) (RLM), 2022 WL 900602, at *10 (E.D.N.Y. Mar. 28, 2022) ("In sum, the totality of direct and circumstantial evidence fails to raise an inference of age discrimination.").  The Court, however, denied Defendant's motion for summary judgment with respect to Plaintiff's claim for retaliation for filing an age discrimination complaint under the ADEA, NYSHRL, and NYCHRL.  *See id.* at *11.

Defendant argues that "[a]ny testimony, argument, evidence, or discussion regarding any alleged age discrimination should be excluded as irrelevant and unduly prejudicial to [Defendant], particularly when weighed against its utter lack of probative value [pursuant to] Fed. R. Evid. 401 and 403." Dkt. No. 81 at 8-9.  Plaintiff argues that evidence of age discrimination is relevant and permissible, particularly since Plaintiff's retaliation claim regarding age discrimination is proceeding to trial.  *See* Dkt. No. 82 at 6.

15

The Court agrees with Plaintiff. Plaintiff points to Second Circuit case law that states, unequivocally, that "[i]t is certainly the case that when presiding over a retaliation trial where the attendant claims of discrimination have already been dismissed, the district court cannot exclude evidence of the allegedly discriminatory acts because to do so would hamstring the plaintiff's case by preventing her from demonstrating that she engaged in protected activity." *Morales v. New York State Dep't of Lab., Div. of Emp. Servs.*, 530 F. App'x 13, 15 (2d Cir. 2013); *see also* Dkt. No. 82 at 6. In *Morales*, the Second Circuit affirmed the district court's decision to permit "both testimony about and the submission of documentary evidence of the discriminatory acts alleged by [the plaintiff]—that is, the disciplinary actions taken against her." *Morales*, 530 F. App'x at 15. As in *Morales*, the Court will not hamstring Plaintiff's case to prevent him from raising claims of age discrimination in connection with his retaliation claim.

Indeed, contrary to Defendant's assertion, the Court did *not* dismiss Plaintiff's claim of retaliation for filing an age discrimination complaint. *See Sohnen*, 2022 WL 900602, at *11 (describing retaliation claim where "the record shows that Plaintiff was suspended mere weeks after the investigation into Plaintiff's HR complaint—which included age discrimination allegations—was complete."). Thus, Defendant's reliance on *Gorbea* in their motion is misplaced since the age-discrimination related retaliation claim has not been dismissed. *Cf. Gorbea*, 2014 WL 2916964, at *2 ("claims that were dismissed or determined by summary judgment [] may not be tried, and evidence relating thereto may not be introduced at trial [as] Federal Rule of Evidence 402 states that '[i]rrelevant evidence is not admissible.'").

Accordingly, the Court denies Defendant's motion to preclude evidence of, or reference to, previously dismissed claims of age discrimination.

**C.**    **Defendant's motion to preclude evidence of or reference to other lawsuits against Defendant**

Defendant seeks to preclude "evidence relating to other lawsuits involving [Defendant]." Dkt. No. 81 at 9.  Specifically, Defendant seeks to preclude "evidence of an unrelated claim brought by Jerome Jones, a former employee of [Defendant] who alleged claims of race discrimination and retaliation pursuant to New York State and City law (the 'Jones Complaint')." *Id.* at 10.

On the 2024 JPTO, Plaintiff lists, as proposed exhibit 19, the "proposed amended complaint filed by Jerome Jones against Defendant."  Dkt. No. 80 at 28.  Plaintiff also appears to list, as proposed exhibit 20, "Defendant's Answer to the Jones Complaint."  Dkt. No. 82 at 10. Plaintiff argues that the document is "[n]ot being proposed for the truth of the matter asserted, but for [the] fact that Jones also complained of discriminatory conduct and was terminated."  Dkt. No. 80 at 28.  Plaintiff adds that the document may be used for impeachment.  *Id.*

The Court grants, in part, Defendant's motion.  As Plaintiff notes, in non-discrimination cases, evidence of prior lawsuits is typically excluded.  *See* Dkt. No. 82 at 9.  "Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court."  *Moore v. Rubin*, No. 17-CV-6404 (BMC), 2020 WL 13573582, at *3 (E.D.N.Y. Jan. 31, 2020) (citing *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254 (S.D.N.Y. 2012).  "Such evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice."  *Id.* (quoting *Puglisi v. Town of Hempstead Sanitary District No. 2*, No. 11-CV-445 (PKC), 2014 WL 12843521, at *3 (E.D.N.Y. Jan. 27, 2014) (quotation omitted)).

17

The Second Circuit, however, "has recognized an exception to this principle in the context of discrimination cases." *Puglisi*, 2014 WL 12843521, at *3. "A plaintiff in a discrimination action may offer evidence from other related discrimination lawsuits, such as a plaintiff's or witness's testimony in the other lawsuit, to show the existence of a hostile work environment or pattern of discriminatory conduct by the defendant." *Id.* (citing *Taitt v. Chem. Bank.*, 849 F.2d 775, 778 (2d Cir. 1988)); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("[E]vidence of other incidents of racism and employment discrimination at the defendant employer was relevant to the question of whether there was a []pervasive and continuous atmosphere of racial discrimination[.]"). But "the exception for admitting other litigation evidence is limited to relevant *evidence* from other lawsuits, not the pleadings from those lawsuits, which establish only the existence, not the facts, of the other lawsuits." *Puglisi*, 2014 WL 12843521, at *3 (emphasis added).

Here, Mr. Jones's proposed amended complaint (Plaintiff's proposed exhibit 19) has no probative value to the present case. *See Puglisi*, 2014 WL 12843521, at *3 ("The bare, unproven allegations of discrimination contained in the complaints have no probative value."). Similarly, Plaintiff has not provided any justification for introducing Defendant's response to Jones's proposed amended complaint (Plaintiff's proposed exhibit 20). As Defendant notes, Mr. Jones, "a former supervisor, alleges that white Direct Sales Representatives were treated more favorably than Black and Hispanic representatives with respect to assignment of sales territories." Dkt. No. 81 at 10. As Defendant argues, Mr. Jones and Mr. Sohnen reported to different supervisors; had different human resources professionals handle their complaints; and raise different claims of discrimination, as Mr. Jones alleges race discrimination and Mr. Sohnen alleges disability

discrimination.  *See id.*  Moreover, it is not clear whether Mr. Jones's claims have been finally adjudicated in the state court proceeding.

Additionally, the risk of unfair prejudice and confusion that would result from the admission of the Mr. Jones's complaint, therefore, would be substantial.  *See Smith v. Fricke*, 635 F. Supp. 3d 152, 170 (N.D.N.Y. 2022) ("Plaintiff seeks to offer the lawsuits for one purpose: to show that, when '[Defendant] engaged in conduct with [ ] Plaintiff,' Defendant acted "in conformity with his past practice[ ]." [] Such a purpose is impermissible."); *Anthony v. City of Bridgeport*, No. 3:12-CV-619 (WIG), 2015 WL 3745302, at *4 (D. Conn. June 15, 2015) ("Because of the limited probative value of the evidence of other complaints, and because of the danger of unfair prejudice to [defendant] if admitted, [], precluding this evidence is also appropriate under Rule 403 of the Federal Rules of Evidence.").

Notwithstanding the above, the Court will revisit whether to permit Plaintiff to "offer *evidence* from other related discrimination lawsuits, such as a plaintiff's or witness's testimony in the other lawsuit, to show the existence of a hostile work environment or pattern of discriminatory conduct by the defendant" at the final pre-trial conference.  *See Puglisi*, 2014 WL 12843521, at *3 (citing, *inter alia Taitt v. Chem. Bank.*, 849 F.2d 775, 778 (2d Cir. 1988) and *Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) (emphasis added).  Plaintiff suggests that he intends to introduce "testimony concerning the underlying discrimination" in Jones's case (Dkt. No. 82 at 9) but does not point to the specific exhibits to which he is referencing, if any.  Without more, the Court is unable to make a complete ruling on this issue prior to the final pre-trial conference.

    **D.**    **Defendant's motion to preclude evidence of or reference to punitive damages, including Defendant's size and financial condition or, alternatively, bifurcating any claims for punitive damages**

Defendant argues that the "Court should dismiss Plaintiff's claims for punitive damages and bar evidence thereof of any kind, including testimony, documents, reference to, or discussion of punitive damages and [Defendant's] net worth, as such information is not relevant to Plaintiff's claims and would unduly prejudice [Defendant]." Dkt. No. 81 (citing *Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, No. 94-CV-5220 (AJR), 1998 WL 665138, at *1-2 (S.D.N.Y. Sept. 25, 1998) and *Tout v. County of Erie*, No. 95-CV-66H, 1998 WL 683770, at *7 (W.D.N.Y. Sept. 9, 1998)).  As discussed below, the Court grants in part and denies in part this motion.

### i.    Defendant's motion to bar an award for punitive damages

Defendant argues "Plaintiff is not entitled to damages under the ADEA, which does not provide for punitive damages." Dkt. No. 81 at 11 (citing *Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005)).  Defendant also argues that Plaintiff is not entitled to punitive damages under the ADA or the NYCHRL, as "there is insufficient evidence that Charter acted with malice or reckless indifference to submit a claim for punitive damages under the ADA to the jury under controlling Second Circuit precedent."  *Id.* (citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 236 (2d Cir. 2000), *superseded by statute on other grounds*).  Further, Defendant argues that there is "insufficient evidence to support an award of punitive damages under the NYCHRL, which requires a showing of willful or wanton negligence, recklessness, conscious disregard of his rights or conduct so reckless as to amount to such disregard."  *Id.*  (citing *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017)).

As an initial matter, Defendant is permitted to move to dismiss Plaintiff's punitive damages claim as part of its motion *in limine*, as such a request—if granted—would narrow the issues to be presented by the jury.  *See, e.g., Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 244 (W.D.N.Y. 2003) (finding a "request to dismiss the punitive damages claim may properly be

brought as a pretrial motion *in limine*" and collecting case where Courts "have entertained such motions on the eve of trial as procedural devices designed to narrow the issues to be presented to the jury"); *Pepe v. Maklansky*, 67 F.Supp.2d 186, 187-88 (S.D.N.Y.1999) (denying motion *in limine* seeking order dismissing employee's punitive damages claim in civil assault action, finding it "well settled that the determination whether to award punitive damages lies in the discretion of the trier of the facts."); *Baxter Diagnostics*, 1998 WL 665138, at *1-2 (granting defendant's motion *in limine* dismissing claim for punitive damages in contract action).

The Court agrees with Defendant that Plaintiff is not entitled to punitive damages under the ADEA. *See Boise*, 121 F. App'x at 892 ("To the extent Boise sues NYU to recover punitive damages, this court has ruled that such relief is not available under the ADEA.") (citing *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146–48 (2d Cir. 1984)); *Burlingame v. Martin*, No. 122-CV-24 (BKS) (CFH), 2022 WL 2315617, at *2 (N.D.N.Y. June 28, 2022) ("The Second Circuit has held that, under the ADEA, plaintiffs cannot recover punitive damages or compensatory damages for emotional distress.") (citing *Johnson*, 731 F.2d at 147-48); *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 482 (S.D.N.Y. 2019) ("It is well-settled that the ADEA does not allow plaintiffs to recover for emotional distress, pain and suffering, or any other non-economic damage.").

The Court, however, will allow Plaintiff to submit claims for punitive damages where they are available. The applicability of punitive damages is a question within the factfinder's province. *See Foster v. Time Warner Ent. Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001) (explaining that the issue of whether punitive damages were warranted against employer in former employee's action for retaliation under the ADA was for the jury); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 178 (E.D.N.Y. 2006) (finding sufficient basis for jury to award punitive damages for

discrimination claim under the ADA), *aff'd*, 531 F.3d 127 (2d Cir. 2008); *cf. Lozada v. Weilminster*, 92 F. Supp. 3d 76, 108 (E.D.N.Y. 2015) ("Generally, the issue of whether defendants' conduct is sufficiently serious to warrant punitive damages is a question best left to the jury"). Similarly, with respect to the state law claims, the Second Circuit has recognized that "under New York law, the decision to award punitive damages and their amount are questions which primarily reside in the jury's discretion." *Racich v. Celotex Corp.*, 887 F.2d 393, 397 (2d Cir. 1989) (citing *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)).

Therefore, the Court is not persuaded that Plaintiff should be precluded from submitting punitive damages on his claims to the jury in the instant matter.

### ii.   Defendant's motion, in the alternative, to bifurcate damages

In the alternative, Defendant requests that the Court "bifurcate the liability and damages portions of the trial" and submit "evidence of damages to the jury only if it determines in favor of Plaintiff on liability." Dkt. No. 81 at 15.

Under Rule 42(b) of the Federal Rules of Civil Procedure, a district court has the discretion to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *see also Vichare v. AMBAC, Inc.*, 106 F.3d 457, 467 (2d Cir. 1996) ("The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency." ). The decision to bifurcate a trial "is within the sound discretion of the Court." *Dollman v. Mast Indus., Inc.*, No. 08-CV-10184 (WHP), 2011 WL 3911035, at *2 (S.D.N.Y. Sept. 6, 2011) (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999)); *see also In re Sept. 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015) ("Decisions to bifurcate trials . . . are authorized by Federal Rule of Civil Procedure 42(b) and are typically well within the discretion of district courts."). "Bifurcation is the exception, not the rule," *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 67

(E.D.N.Y. 2007) (collecting cases), and the burden of demonstrating whether bifurcation is warranted "falls squarely on the party seeking bifurcation." *Doe 1 v. United States Twirling Ass'n, Inc.*, No. 22-CV-05399 (OEM) (ST), 2024 WL 1858230, at \*2 (E.D.N.Y. Apr. 28, 2024); (quotations and citations omitted); *see also Miller v. Arab Bank, PLC*, No. 18-CV-02192 (HG) (PK), 2022 WL 5264899, at \*1 (E.D.N.Y. Sept. 26, 2022) ("Bifurcation is the exception, not the rule, and the party seeking bifurcation shoulders the heavy burden of establishing that bifurcation is warranted."); *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 433 (W.D.N.Y. 2017) (same). This is because "[a] single trial tends to lessen the delay, expense and inconvenience to all concerned." *Dollman*, 2011 WL 3911035, at \*2. "[J]uries 'routinely' determine punitive damages alongside liability." *Farghaly v. Potamkin Cadillac-Buick-Chevrolet-Geo, Ltd.*, No. 18-CV-11106, 2021 WL 4267656, at \*2 (S.D.N.Y. Sept. 20, 2021) (Nathan, J.).

Here, the Court sees no compelling reason to depart from the normal course here, as Defendant has not carried its burden of showing that bifurcating the damages portion of the trial is warranted in this case. Defendant fails to allege any specific prejudice that it would suffer if the punitive damages portion of the trial is not bifurcated from the liability and compensatory damages portions. Indeed, nothing here suggests that Defendant would suffer any particularly prejudicial effects of a unified trial that customarily are associated with a trial on discrimination claims. *See Falzon v. Johnson*, No. 12-CV-674 (CLP), 2016 WL 11430072, at \*5 (E.D.N.Y. Oct. 24, 2016) (citing cases where claimed prejudice by unified trial could be remedied by limiting instruction when finding that it was unclear whether "bifurcation [would] eliminate or even substantially reduce the potential prejudice that Defendants fear"); *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284-85 (D. Conn. 2004) (denying request for bifurcation where claimed prejudice was unclear to the court); *Chase v. Near*, No. 06-CV-685C (SC), 2007 WL 2903823, at \*2

23

(W.D.N.Y. Oct. 1, 2007) (rejecting bifurcation request where the underlying facts did not show specific potential for prejudice in a unified trial).

Each of the Fed. R. Civ. P. 42(b) factors favor *not* bifurcating damages here. First, bifurcating damages will not further the convenience of the parties or the Court. Plaintiff's suit has been pending since 2018. A decision to bifurcate the trial would only prolong the resolution of this already-lengthy litigation and potentially subject witnesses to multiple rounds of testimony. *See Moody*, 271 F. Supp. 3d at 434-35 ("In addition, a decision to bifurcate may create unnecessary disputes about the admissibility of particular evidence during the liability phase—the argument and resolution of which may prolong the jury's ultimate determination."); *Falzon*, 2016 WL 11430072, at *3 ("Therefore, bifurcating trial would actually reduce the convenience for witnesses, some of who may be forced to testify not once but twice, at both stages of the trial, and would also reduce judicial economy by increasing the time needed for both trials"); *Doe 1*, 2024 WL 1858230, at *3 ("the combination of the anticipated testimony content and overlap of witnesses alone supports the contention that if there is a verdict finding liability of Defendants, bifurcating liability and damages would be inefficient rather than presenting all issues and all evidence to the jury at one time"); *Briggs & Stratton Corp. v. Chongqing RATO Power Co.*, No. 5:13-CV-316 (LEK) (ATB), 2013 WL 5963151, at *5 (N.D.N.Y. Nov. 7, 2013) (finding that a bifurcated trial could subject witnesses "to two rounds of discovery and trial testimony would be highly inefficient").

Second, there is no basis to argue that Defendant will be prejudiced by the Court proceeding on the normal course here. "[A]ny potential prejudice that may result from determining punitive damages alongside liability can be addressed 'through an appropriate limiting instruction.'" *Farghaly*, 2021 WL 4267656, at *2 (citing *McLeod v. Llano*, No. 17-CV-6062 (ARR) (RLM), 2021 WL 1669732, at *3 (E.D.N.Y. Apr. 28, 2021)); *see also Aldous v. Honda Motor Co.*, No. 94-

24

CV-1090, 1996 WL 312189, at *2 (N.D.N.Y. May 30, 1996) ("Defendants point to no particular factors specific to this case that distinguish the potential for prejudice here from the potential prejudice which is normally and customarily dealt with through an appropriate charge and curative instructions where necessary").  Defendant relies on a passage from a line of cases to argue that bifurcation of the punitive damages portion of a trial "is encouraged to avoid prejudice."  Dkt. No. 81 at 15 (citing *Marshall v. Port Auth. of New York & New Jersey*, No. 19-CV-2168 (LJL), 2022 WL 17491006, at *6 (S.D.N.Y. Dec. 5, 2022); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373-74 (2d Cir. 1988); and *Sooroojballie v. Port Auth. of New York and New Jersey*, 816 F. App'x 536, 549-50 (2d Cir. 2020)).  The Second Circuit, however, has repeatedly found that the decision to bifurcate a trial is within the sound discretion of the Court, *see Grant v. Lockett*, No. 19-1558, 2021 WL 5816245, at *1 (2d Cir. Dec. 8, 2021)—discretion which, "by its very nature . . . yields differing outcomes."  *Amato*, 170 F.3d at 316; *see also Mensler v. Wal-Mart Transportation, LLC*, No. 13-CV-6901 (JCM), 2015 WL 7573236, at *3 (S.D.N.Y. Nov. 24, 2015) ("Cases in which bifurcation has been granted or denied can be informative but are not decisive in a Rule 42(b) analysis, since by its very nature, discretion yields differing outcomes." (internal quotations, citations, and alterations omitted)).  The circumstances and issues presented by the cases cited by Defendant—each involving multiple defendants and disparate causes of action—are not sufficiently analogous such that the Court should abandon its discretion afforded under Rule 42(b) and mechanically apply the discrete law those cases articulate.

And third, a bifurcated trial will not lessen or eliminate any juror confusion that would otherwise be posed by one that is unified.  The issues to be tried are not particularly complex—the remaining claims consist of three charges by one plaintiff under the ADA, ADEA, NYSHRL, and the NYCHRL against one defendant.  The Court does not see—and Defendant does not allege—

25

an increased possibility of confusion to the jury if liability and damages are tried together.  *See Lovejoy-Wilson*, 242 F. Supp. 2d at 246 (declining the defendant's unopposed motion to bifurcate ADA trial because it failed to present "any advantage to bifurcation"); *Epstein v. Kalvin-Miller Int'l, Inc.*, 121 F. Supp. 2d 742 (S.D.N.Y. 2000) (finding employment discrimination suit with federal and state claims did not have "potential to be enormously complex" to warrant bifurcation of trial); *see also Chase*, 2007 WL 2903823, at *2 (finding the defendant failed to carry burden under Rule 42(b) when it did not properly raise the possibility of jury confusion); *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998) (bifurcating liability and damages in an eight-week antitrust trial because "[c]onfronting one complex set of issues at a time is likely to reduce the possibility of jury frustration and confusion."); *Credit Suisse First Bos. Corp.*, 288 F.R.D. at 337-38 (granting request to bifurcate trial where the court was concerned about evidence of actors that were nonparties relating only to apportionment of fault and could clearly be separated in two phases); *Gaffney v. Dep't of Info. Tech. & Telecommunications*, 579 F. Supp. 2d 455. 459 (S.D.N.Y. 2008) (declining bifurcation where there was substantial overlap between issues to be tried).

Accordingly, because Defendant has not carried its burden in showing that bifurcation of the trial in the instant matter is warranted, Defendant's request is denied.

### iii.    Defendant's motion, in the alternative, to limit references to Defendant's financial condition, size, or wealth

Additionally, Defendant argues that Plaintiff should be precluded from "presenting evidence of [Defendant's] financial condition, size, or wealth" in its submission of punitive damages, as it will "inflame the passions of the jury and incentivize a damage award due to the disparity of resources." Dkt. No 81 at 16-17.  Defendant adds that "Plaintiff should be precluded

from suggesting or asking juror to 'send a message' or to act as "the conscience of the community" or engage in other similar appeals" to punish Defendant. *Id.* at 18.

"It is well-settled, in fact, that evidence of a defendant's net worth is properly considered given the goals of punishment and deterrence served by punitive damages." *TVT Recs. v. Island Def Jam Music Grp.*, 257 F. Supp. 2d 737, 745 (S.D.N.Y. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)); *cf. Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 318 (2d Cir. 2004) ("Evidence of wealth . . . is generally inadmissible in trials *not* involving punitive damages" (emphasis added)).  Similarly, "[c]ourts have been instructed to consider the wealth of the defendant" under New York state law when evaluating punitive damages to serve their purpose of punishing and deterring defendants an others from "similarly willful or outrageous misconduct." *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 267 (S.D.N.Y. 1999) (Sotomayor, J.) (collecting cases in suit involving NYCHRL punitive damages); *Koch v. Greenberg*, 14 F. Supp. 3d 247, 275 (S.D.N.Y. 2014) ("The wealth of the defendant is also relevant [under New York law], because a defendant's ability to pay impacts whether damages are sufficient to function as a punishment and a deterrent"), *aff'd*, 626 F. App'x 335 (2d Cir. 2015).

Here, the Court denies Defendant's request.  First, the Court disagrees with Defendant's assertion that "[c]ourts in New York consistently exclude evidence of a party's size, wealth, profits, and financial condition on the grounds that such information is irrelevant and prejudicial." Dkt. No. 81 at 15-16.  Defendant relies on cases (*id.*) that are inapposite to the current matter.  *Cf. Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633 (NGG) (ST), 2022 WL 103670, at *1 (E.D.N.Y. Jan. 11, 2022) (noting award of compensatory damages); *Uzhca v. Wal-Mart Stores, Inc.*, No. 17-CV-3850 (NSR), 2023 WL 2529186, at * (S.D.N.Y. Mar. 15, 2023) (discussing inadmissibility of

wealth of a party in relation to a liability determination); *Moore*, 2020 WL 13573582, at *2 (precluding the defendant's wealth in liability portion of bifurcated trial but noting that such evidence can be introduced to aid the jury in determining punitive damages if liability is found).

Further, the Supreme Court has rejected Defendant's conclusory position that any evidence of its net worth may "inflame the passions of the jury," as "factors such as [evidence of net worth] are typically considered in assessing punitive damages." *See TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (rejecting contention that evidence of wealth led to the jury to base its award on "impermissible passion and prejudice"). To the extent that Defendant requests that Plaintiff be precluded from making statements instructing the jury "to punish [Defendant] for allegedly violating" the relevant statutes (Dkt. No. 81 at 17), the Supreme Court "has long made clear that punitive damages may properly be imposed to further [the] legitimate interests in punishing unlawful conduct and deterring its repetition." *Philip Morris USA v. Williams*, 549 U.S. 346, 352 (2007) (collecting cases) (internal quotations omitted). And as stated above, the Court will mitigate undue prejudice faced by Defendant with proper limiting instructions.

Accordingly, Defendant's motion with respect to its requests concerning punitive damages is denied.

### E.    Defendant's motion to preclude the testimony of Elliot Rifkin

Defendant seeks to preclude the testimony of Mr. Elliot Rifkin, as Defendant argues that "it is not based on his personal knowledge and, therefore lacks probative value, prejudicing" Defendant. Dkt. No. 80 at 17. Defendant argues that "Mr. Rifkin was employed by [Defendant's] predecessor, Time Warner Cable, and left that employment in April 2016, prior to the May 2016 merger of Time Warner Cable and [Defendant]." *Id.* Defendant contends that "Mr. Rifkin was never a [Defendant] employee and could not, therefore, have knowledge of [Defendant's] policies,

practices, or procedures." *Id.*  Further, Defendant argues that "Mr. Rifkin's role as Plaintiff's supervisor at Time Warner Cable ended on August 19, 2015, even earlier than his departure from Time Warner Cable," and that "Mr. Rifkin stopped supervising Plaintiff four months before Plaintiff's Macular Degeneration began to affect his ability to drive, 10 months before Plaintiff surrendered his car, and 16 months before Plaintiff's employment was terminated in February 2017." *Id.*

In response, Plaintiff argues that Mr. Rifkin's testimony is relevant and notes that Defendant did not object to Mr. Rifkin as a trial witness in the 2024 JPTO (or in the 2022 JPTO). *See* Dkt. No 82 at 15.

In the 2024 JPTO, Plaintiff states that "Mr. Rifkin is expected to testify about, among other things, his background, Mr. Sohnen's successful use of public transit to sell Defendant's products/services while employed at Defendant; Mr. Sohnen's disability; Mr. Sohnen's performance as a DSR, generally; the requirements of the DSR role; other DSRs that did not drive a car to complete their job responsibilities; Mr. Sohnen's training of other DSRs; Mr. Sohnen's ability to complete all of his job responsibilities without using a car; his performance reviews of Mr. Sohnen; and internal discussions and decisions regarding all aforementioned topics."  Dkt. No. 80 at 14.  Plaintiff also plans to note that Mr. Rifkin was "okay with" Plaintiff not having a car (in contrast to his subsequent supervisor, Mr. Ellerbee, who allegedly suspended Plaintiff). *See* Dkt. No. 82 at 15.

At bottom, the Court agrees with Plaintiff that Mr. Rifkin—who was properly identified in Plaintiff's initial disclosures nearly six years ago—shall be permitted to testify.  As described in the 2024 JPTO, Mr. Rifkin's testimony appears relevant.  He may therefore testify about his personal knowledge of the events at issue.

**F.    Defendant's motion to preclude evidence of or reference to the investigation and determination of the EEOC, including the testimony of any investigator or other representative of the EEOC**

The parties do not contest whether Plaintiff may seek to admit evidence of the EEOC's charge of discrimination and supporting affidavit, as well as parallel correspondence from EEOC. *See* Dkt. No. 80 at 28 (Plaintiff's Exhibits 14-16).  But Defendant argues that "[a]ny testimony or evidence regarding the EEOC's *investigation and determination* of Plaintiff's EEOC Charge of Discrimination—including any testimony from Roxeanne Zygmund, Kevin J. Barry, or any other representative of the EEOC—should be excluded."  Dkt. No. 81 at 18 (emphasis added); *see also* Dkt. No. 80 (Plaintiff's Exhibits 17-18).  According to Defendant, "[t]he prejudice and confusion created by admission of this cumulative evidence far outweighs any probative value it may have"; further, "admitting such evidence and testimony improperly invades the province of the jury whose role it is to decide the very question addressed by the EEOC."  *Id.*  Defendant adds that "admission of the [EEOC] Determination would require Charter to litigate the Determination, which would both confuse or mislead the jury, and result in an undue waste of time."  *Id.*

In response, Plaintiff notes that "Defendant did not object to inclusion of the EEOC Charge of Discrimination and Supporting Affidavit in the JPTO" or to the "two exhibits of correspondence from the EEOC."  Dkt. No. 82 at 17; *see also* Dkt. No. 80 at 28 (indicating "No Objection" by Defendant in response to PX-14, PX-15, and PX-16)).  Plaintiff further contends that the evidence is admissible, and that Defendant has failed to show substantial prejudice warranting exclusion under Rule 403.  Dkt. No. 80 at 17-19.

"While it is well settled that administrative agency determinations may be admitted as substantive proof on the merits of plaintiff's discrimination or retaliation claims, whether to admit an agency's findings is left to the district court's discretion."  *Puglisi*, 2014 WL 12843521, at *5

30

(citing *Paolitto v. John Brown E & C, Inc.*, 151 F.3d 60, 65 (2d Cir. 1998)); *see Lovejoy-Wilson*, 242 F. Supp. 2d at 242 ("the Second Circuit has held that the findings of an administrative agency resulting from an investigation made pursuant to authority granted by law are generally admissible under the 'public records' exception to the hearsay rule, 'unless the sources of information or other circumstances indicate lack of trustworthiness.'" (quoting Fed. R. Civ. P. 803(8)(C)). In evaluating the admissibility of a determination by the EEOC, the Court should consider "the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency." *Paolitto*, 151 F.3d at 65.

Additionally, the Court should consider whether the EEOC's determination resulted in a probable cause determination or a letter violation. *Id.* A probable cause determination carries lower risk of unfair prejudice, as one "does not suggest to the jury that the EEOC has already determined that there has been a violation." *Id.* at 65 n.3 (quoting *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir. 1986)); *Dodson v. CBS Broad. Inc.*, 423 F. Supp. 2d 331, 334 (S.D.N.Y. 2006). "A letter of violation, however, represents a determination by the EEOC that a violation of the Act has occurred and thus results in a much greater possibility of unfair prejudice." *Paolitto*, 151 F.3d at 65 n.3 (quoting *Gilchrist*, 803 F.2d at 1500); *Dodson*, 423 F. Supp. 2d at 334 (same); *Puglisi*, 2014 WL 12843521, at *5 (same).

The Court reserves ruling on this motion. By 5:00 p.m. EST on January 7, 2025, Plaintiff shall file a supplemental letter addressing why both Plaintiff's proposed Exhibit 17 (styled in the 2024 JPTO as "Defendant's EEOC Statement of Position") and Plaintiff's proposed Exhibit 18 ("EEOC Determination and Right to Sue") should be admitted into evidence, as well as Plaintiff's proposed plan as to how these exhibits will be admitted into evidence. The aforementioned two

exhibits should be attached to Plaintiff's supplemental letter.  By 5:00 p.m. EST on January 9, 2025, Defendant shall file a supplemental letter in further support of its motion *in limine* on this issue and in response to Plaintiff's January 7, 2025 filing.  The supplemental letters shall not exceed 5 pages, respectively, exclusive of exhibits.

The Court notes that if the proposed EEOC testimony and exhibits "were to be admitted into evidence, a limiting instruction given at the appropriate time would sufficiently guard against any potential prejudice associated with the EEOC's determination." *Senecal v. B.G. Lenders Serv., LLC*, No. 1:12-CV-0487 (MAD), 2015 WL 13650048, at *3 (N.D.N.Y. Feb. 9, 2015) (reserving ruling on a motion *in limine*); *see also Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 678 (S.D.N.Y. 2001) (admitting EEOC determination and noting "[t]he jury will view the evidence of the EEOC 'probable cause' finding in the context of a limiting instruction that a finding of 'probable cause' is not a final determination of liability, and that they have an independent duty as fact finders to make their own determination of the issue").  Thus, as the Court may permit the proposed exhibits and testimony into evidence, the parties shall include proposed limiting instructions in the party's proposed jury instructions that are to be filed by January 8, 2025.  *See* Text Order dated October 30, 2024.

**G.    Defendant's motion to preclude evidence of and reference irrelevant character evidence regarding witnesses, including Eric Ellerbee's sexual orientation and arrest record**

Defendant seeks to bar "all character evidence" from the trial in this action.  *See* Dkt. No. 81 at 20.  Defendant's request appears too sweeping and the Court therefore denies Defendant's motion on this general point without prejudice.

Defendant also seeks to bar Plaintiff "from introducing evidence, testimony, mention or discussion of or reference to Eric Ellerbee's sexual orientation, and prior arrest for driving under

the influence ('DUI'), which did not result in a conviction." Dkt. No. 81 at 20.  Plaintiff notes that "[u]nless put at issue by Defendant or the witness itself (and even then Plaintiff is challenged as to how this would be relevant), Plaintiff certainly will not seek to introduce evidence of [Mr.] Ellerbee's sexual orientation or prior arrests."  Dkt. No. 82 at 5.

As an initial matter, the Court will not permit any inquiry into Mr. Ellerbee's sexual orientation, which appears to be wholly irrelevant to the instant action.  *Cf. Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 410 (E.D.N.Y. 2013) (permitting evidence of a witness's sexual orientation and marital status given that the Title VII plaintiff was alleging sexual harassment).  The Court therefore grants Defendant's motion with respect to precluding Plaintiff from introducing evidence, testimony, mention or discussion of or reference to Mr. Ellerbee's sexual orientation.

Similarly, Mr. Ellerbee's DUI arrest is equally irrelevant to this case.  This is not a case involving false arrest or malicious prosecution.  There is no probative value in evidence of a non-party witness's prior arrest, particularly an arrest that did not result in conviction.  Additionally, the evidence of Mr. Ellerbee's prior arrest "is inadmissible under Federal Rule of Evidence 404(b), which provides that '[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'"  *Triolo v. Nassau Cnty., NY*, No. 16-CV-2085 (AKT), 2018 WL 6268845, at *1 (E.D.N.Y. Nov. 30, 2018) (quoting Fed. R. Evid. 404(b)(1)).  Further, there is no indication that Mr. Ellerbee's DUI arrest "fits into the exceptions of Rule 404(b)(2), such as motive, opportunity, intent, etc."  *Triolo*, 2018 WL 6268845, at *1 (citing Fed. R. Evid. 404(b)(2)).  And there is no impeachment value in the evidence of Mr. Ellerbee's prior arrest.  *See id.* (citing *Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in

reason, impeach the integrity or impair the credibility of a witness.")); *see also Roguz v. Walsh*, No. 09-CV-1052 (TLM), 2013 WL 1498126, at *4 (D. Conn. Apr. 5, 2013) (explaining that, in addition to being inadmissible under Rule 608, "arrests are not admissible under Rule 609").

Finally, as noted above, Plaintiff states that "Mr. Ellerbee [] was deposed in 2020 and [] is expected to testify at trial or have his deposition transcript read into the record[.]"  Dkt. No. 77 at 24.  As discussed above, the parties shall be prepared to discuss whether Mr. Ellerbee will testify as a live witness at the Court's final pre-trial conference.

### H.    Defendant's motion to preclude evidence of and reference to the parties' pretrial positions and discovery disputes

Defendant seeks to preclude any evidence of the parties' pretrial positions and/or any discovery disputes.  *See* Dkt. No. 81 at 21.  In response, Plaintiff states that he "will not introduce discovery disputes unless put at issue by Defendant" and "notes that Defendant is also precluded from offering discovery disputes under the caselaw it cites."  Dkt. No. 82 at 5.

The Court grants Defendant's motion.  Defendant argues that "[t]he introduction of discovery disputes, procedural delays, or pretrial positions does not have any tendency to make the existence of any fact that is of consequence to the determination of this action more or less probable."  *Id.*  The Court agrees.  *See Rao v. Rodriguez*, No. 14-CV-1936 (NGG) (ST), 2017 WL 1403214, at *8 (E.D.N.Y. Apr. 18, 2017) (noting that references to alleged discovery violations are "irrelevant and prejudicial, except insofar as necessary to effectuate the adverse inference" regarding certain evidence).

Plaintiff, however, adds that "should Defendant be permitted to introduce the witnesses and exhibits—first made known to Plaintiff years after discovery ended and, in many cases, as recently as last week—Plaintiff will have no choice but to raise this deficiency for the jury's

consideration." Dkt. No. 82 at 5.  As the Court has reserved its ruling regarding the 2024 Witnesses and 2024 Documents, there is no need, at this stage, for the Court to address this portion of Plaintiff's argument.  The Court, however, will not permit Plaintiff to make any comments about the timing of Defendants' production of the 2022 Witnesses or 2022 Documents to the jury.

I.     **Defendant's motion to preclude evidence of and reference to the size and nature of Defendant's legal defense team**

Defendant seeks to preclude any statements regarding the size of Thompson Coburn LLP ("TC"), the law firm representing Defendant, as well as the amount of time or money that may have been expended defending this action.  *See* Dkt. No. 81 at 21.  Plaintiff does not appear to address Defendant's argument, although Plaintiff does address that Plaintiff should be permitted to reference Defendant's size, net worth, and financial condition (in connection with Plaintiff's claim for punitive damages).  *See* Dkt. No. 82 at 10-11.

The Court grants Defendant's motion.  There is no basis for Plaintiff to offer any commentary about Defendant's law firm, as such commentary would only serve to confuse or prejudice the jury.  *See, e.g., Koufakis v. Carvel,* 425 F.2d 892, 904 & n. 16 (2d Cir. 1970) (remanding for new trial in part because of attacks on opposing counsel); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 273 (S.D.N.Y. 2015) ("The jury's attitudes about class actions generally, or employment class actions specifically, or the business model, role, or ethics of class-action counsel, have no bearing on these issues.  And commentary on this issue can serve only to confuse, inflame, and introduce unfair prejudice."); *cf. Jean-Laurent*, 840 F. Supp. 2d at 550 (precluding the plaintiff from referring to defense counsel as "City attorneys" "because it may lead the jury to believe that they may be indemnified by the City of New York, which is commonly viewed as a 'deep pocket' for the purposes of any potential judgment") (cleaned up).

Ultimately, Plaintiff is not permitted to make any statements regarding the size or resources of TC, or the makeup or size of Defendant's legal team or the money spent defending this matter.

**J.    Defendant's motion to preclude evidence that is not based on the personal knowledge of the witness, including hearsay and opinion testimony.**

Defendant seeks to preclude any testimony not based on a witness's personal knowledge, including any hearsay or opinion testimony. *See* Dkt. No. 81 at 22.  "The Federal Rules of Evidence define hearsay as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  *Jean-Laurent*, 840 F. Supp. 2d at 562 (quoting Fed. R. Evid. 801(c)).  "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."  Fed. R. Evid. 802.  Plaintiff agrees that "trial testimony must be based on personal knowledge."  Dkt. No. 82 at 6.

Regardless of the parties' agreement, Defendant's request to bar all such testimony is premature.  The Court therefore denies Defendant's motion on this point, without prejudice to renewal during the trial.  *See Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 150 (S.D.N.Y. 2003) ("ruling on defendants' hearsay challenge to the letter would be premature at this time.").

**V.    Conclusion**

Accordingly, Plaintiff's motion *in limine* is denied in part and the Court otherwise reserves its ruling as described in this Opinion and Order.  Defendant's motion *in limine* is granted in part and denied in part; the Court also reserves its ruling as described in this Opinion and Order.

Per the Court's October 30, 2024 order, a final pre-trial conference is scheduled for January 16, 2025 at 2 p.m. in Courtroom 324 North before the undersigned.  Any outstanding issues will be addressed at the final pre-trial conference.

Dated:  Brooklyn, New York    **SO ORDERED.**
     January 3, 2025

                 */s/ Joseph A. Marutollo*
                JOSEPH A. MARUTOLLO
                United States Magistrate Judge